Christopher J. Kayser (OSB #984244)
ckayser@lvklaw.com
David G. Samuels (OSB #206308)
dsamuels@lvklaw.com
LARKINS VACURA KAYSER LLP
121 SW Morrison Street, Suite 700
Portland, Oregon 97204
Telephone: 503-222-4424

*Attorneys for Intervenor*
*Oregon Primary Care Association*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ASTRAZENECA PHARMACEUTICALS LP,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>DAN RAYFIELD, in his official capacity as ATTORNEY GENERAL OF THE STATE OF OREGON, KATHLEEN CHINN, in her official capacity as BOARD PRESIDENT OF THE OREGON BOARD OF PHARMACY; RICHARD JOYCE, in his official capacity as BOARD VICE PRESIDENT OF THE OREGON BOARD OF PHARMACY; and SHANNON BEAMAN, JENNIFER HALL, AMY KIRKBRIDE, VICTORIA KROEGER, PRIYAL PATEL, ANA PINEDO, and BRYAN SMITH, in their official capacities as BOARD MEMBERS OF THE OREGON BOARD OF PHARMACY,<br><br>　　　　Defendants. | Case No. 3:25-cv-02042-MO<br><br>DECLARATION OF CLAIRE TRANCHESE IN SUPPORT OF INTERVENOR'S MOTION FOR INTERVENTION |

I, Claire Tranchese, declare as follows:

1. I am the Deputy Director of the Oregon Primary Care Association (OPCA). I have held this position since 2018 and have held other positions at OPCA since 2011. Prior to my time at OPCA, I gained 3 years of experience at the Oregon Office of Rural Health.

2. As the Deputy Director of OPCA and, until recently, acting Executive Director, I am responsible for engaging policy makers and federal and state level stakeholders on the mission and goals of Federally Qualified Health Centers/Community Health Centers (FQHCs/CHCs), guiding the board and staff on strategic plans of the organization through data informed and data driven decisions, and participating in meetings with collaborative partners, funders, conferences and media opportunities to discuss policy priorities, data and the goals and missions of the organization.

3. OPCA is a non-profit organization representing all of Oregon's thirty-three community health centers that provide primary, behavioral, and oral health care services to over 470,000 Oregonians at more than 270 service locations across the state. OPCA's members, like all FQHCs/CHCs, are required by law to treat any patient regardless of their ability to pay.

4. OPCA actively promotes accessible, affordable, and quality primary, behavioral and oral healthcare services to uninsured and medically underserved populations in Oregon. OPCA fulfills this mission, in part, through its consistent and sustained engagement in state-level advocacy on behalf of the populations it serves.

5. All of Oregon's community health centers are eligible for and participate in the federal 340B drug pricing program (340B Program). The 340B Program is an essential tool that OPCA's member community health centers use to expand access to health care and improve health outcomes.

6. Like other covered entities participating in the 340B Program, OPCA's members contract with local independent pharmacies, chain drug stores and other kinds of pharmacies to dispense 340B-purchased drugs on their behalf. These contract pharmacy partnerships allow FQHCs to utilize the 340B Program, which provides significant discounts on outpatient drugs,

DECLARATION OF CLAIRE TRANCHESE IN SUPPORT OF INTERVENOR'S MOTION FOR INTERVENTION

with savings used to subsidize care for underinsured and uninsured patients. In Oregon, thirteen of OPCA's health center members do not own their own pharmacy. Instead, they rely solely on contract pharmacies to allow them to provide affordable life-saving medications to their patients. And even for members with in-house pharmacies, contract pharmacies are crucial for making discounted medications available in local and convenient locations for patients.

7. OPCA surveyed its members in September of 2020—just after the first manufacturers began restricting contract pharmacy arrangements—to better understand what services communities were at risk of losing due to the restrictions. Thirteen of Oregon's health centers responded. These thirteen health centers explained that they invest every penny of 340B savings back into the communities they serve through programming such as, housing, prescription assistance, dental care, behavioral health, case management, clinical pharmacy, and clinical site expansion. Without the 340B Program, it would be difficult for health centers to provide these community services because the services are either undercompensated or uncompensated by third party payers.

8. It is clear from OPCA surveys and direct communications with OPCA members that drug manufacturers' contract pharmacy restrictions against Oregon's community health centers have caused irreparable harm over the past five years since the first restrictions were adopted in 2020. For example, health center providers have been forced to change therapeutic options for patients, and FQHCs have less 340B savings to invest in sliding fee discounts on prescription drugs and expanding access to health care.

9. The harm caused by the restrictions extends to patients at the pharmacy counter. Many OPCA member contract pharmacies pass directly to eligible patients the discounts that manufacturers are required to give under the 340B Program. Because most contract pharmacies no longer have access to 340B drugs, patients have to pay full price at those pharmacies or else travel to a pharmacy that still has access. In some cases, rather than patients paying full price, Oregon FQHCs have tried to maintain affordability by covering the cost of discounts themselves. They have arranged for contract pharmacies to honor the FQHC's sliding fee discount schedule or

DECLARATION OF CLAIRE TRANCHESE IN SUPPORT OF INTERVENOR'S MOTION FOR INTERVENTION                                                                                              Page 3

provided patients with a "pharmacy card" signaling that the patient should receive a discount. Under these arrangements, the contract pharmacy applies the discount and the FQHC pays the difference out of its own pocket. These restrictions therefore either force patients to pay more or impose significant financial burdens on FQHCs, undermining their ability to serve vulnerable populations.

10. In December 2024, OPCA surveyed its member health centers to understand the direct impact of drug manufacturers' contract pharmacy restrictions on their operations. We received fourteen responses. These fourteen health centers collectively lost $10.5 million in 340B savings in calendar year 2023.

11. OPCA sought relief from these restrictions that have compounded year over year as more and more manufacturers joined together in limiting 340B drug delivery to community health centers' contract pharmacy partners. To obtain such relief, OPCA directly participated in the drafting of House Bill 2385, working with lawmakers, legislative attorneys, and legislative staff to provide technical expertise.

12. In addition, OPCA actively advocated and lobbied for the passage of House Bill 2385 throughout the state of Oregon. OPCA engaged in over 120 advocacy "actions" supporting enactment of House Bill 2385. OPCA defines an "action" as an individual email, phone call, meeting, or submitted letter. During its advocacy in support of House Bill 2385, OPCA requested its members host lawmakers at their care delivery sites, submit written testimony, and deliver in-person testimony.

13. OPCA staff members also engaged in targeted, individualized advocacy efforts by speaking directly with members of the Oregon House of Representatives and the Oregon Senate regarding the need for House Bill 2385.

/ / /

/ / /

/ / /

I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand they are made for use as evidence before this Court and are subject to the penalty of perjury.

_____
Claire Tranchese, Deputy Director
Oregon Primary Care Association

Dated: 12/12/2025