Brad S. Daniels, OSB No. 025178
brad.daniels@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone: 503.224.3380

William B. Schultz*
wschultz@zuckerman.com
Courtney Christensen*
cchristensen@zuckerman.com
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

*Attorneys for Amici Curiae The American Hospital
Association, 340B Health, Hospital Association of
Oregon, and American Society of Health-System
Pharmacists*
*pro hac vice

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ASTRAZENECA PHARMACEUTICALS LP,** *et al.,* <br><br> **Plaintiff,** <br><br> v. <br><br> **Dan RAYFIELD, in his official capacity as Attorney General of the State of Oregon,** *et al.,* <br><br> **Defendants.** | Case No.:  3:25-cv-2042-IM <br><br> **BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

I.     H.B. 2385 IS NOT PREEMPTED BY FEDERAL PATENT LAW. ..................................... 2

II.    H.B. 2385 DOES NOT VIOLATE THE CONTRACTS CLAUSE. ...................................... 4

CONCLUSION ................................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES**

*AbbVie v. Fitch*,
152 F.4th 635 (5th Cir. 2025) .................................................................................... 3

*AbbVie v. Murrill*,
166 F.4th 528 (5th Cir. 2026) ................................................................................. 4, 5

*Astra USA, Inc. v. Santa Clara Cnty.*,
563 U.S. 110 (2011) .................................................................................................. 5

*AstraZeneca Pharms. LP v. Bailey*,
2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ............................................................ 2

*AstraZeneca Pharms. LP v. Harris*,
4:24-cv-268 (Dkt. 142) (E.D. Ark. Sept. 30, 2025) ................................................. 2

*AstraZeneca v. Fitch*,
766 F. Supp. 3d 657 (S.D. Miss. Dec. 23, 2025) ...................................................... 2

*AstraZeneca v. Lopez*,
2026 WL 497141 (D. Haw. Feb. 23, 2026) .............................................................. 2

*AstraZeneca v. Weiser*,
2025 WL 3653161 (D. Colo. Dec. 17, 2025) ......................................................... 2, 4

*Biotechnology Industry Organization v. District of Columbia*,
496 F.3d 1362 (Fed. Cir. 2007) .......................................................................... 2, 3, 4

*Hillsborough Cnty. v. Auto. Med. Labs.*,
471 U.S. 707 (1985) .................................................................................................. 3

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
480 U.S. 470 (1987) .................................................................................................. 5

*Novartis v. Bailey*,
2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ............................................................ 2

*Novartis v. Fitch*,
738 F. Supp. 3d 737 (S.D. Miss. 2024) ................................................................. 2, 3

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024) ................................................................................... 3

*PhRMA v. Murrill*,
2024 WL 4361597 (W.D. La. Sept. 30, 2024) ....................................................... 2, 3

*Sveen v. Melin*,
    584 U.S. 811 (2018) ............................................................................................................ 4

*Webber v. Virginia*,
    103 U.S. 344 (1880) ............................................................................................................ 4

**STATUTES**

42 U.S.C. § 256b .......................................................................................................................... 5

**OTHER AUTHORITIES**

H.B. 2385 ............................................................................................................... *passim*

## **INTRODUCTION**

*Amici* incorporate by reference the Amicus Brief of the American Hospital Association, *et al.*, filed in *Novartis Pharmaceuticals Corp. v. Joyce* (3:25-cv-1330-IM) and *Pharmaceutical Research and Manufacturers of America v. Rayfield* (3:25-cv-01754-IM), and *AbbVie v. Rayfield* (6:25-cv-1332), which challenge the same law as the one challenged in this case, H.B. 2385, and which is also pending before this Court:

- The amicus brief in *Novartis*, attached hereto as Exhibit 1, explains: the history of drug companies' policies surrounding contract pharmacies (including the drug companies' change in position); the importance of contract pharmacy arrangements under the 340B program; that Congress did not create or occupy a field when it established the 340B program; and that H.B. 2385 is not conflict-preempted because it regulates only the delivery of 340B drugs (not price) and does not interfere with 340B's enforcement regime. It further shows why H.B. 2385 is not an extraterritorial regulation that violates the dormant Commerce Clause.

- The amicus brief in *Pharmaceutical Research and Manufacturers of America*, attached hereto as Exhibit 2, explains: why H.B. 2385 does not unlawfully single out a federal program; does not conflict with the federal audit process; and does not obstruct participation in HRSA's now-withdrawn rebate pilot.

- The amicus brief in *AbbVie v. Rayfield* (6:25-cv-1332), attached hereto as Exhibit 3, explains: why H.B. 2385 does not discriminate against the federal government nor its contractors and therefore does not violate the intergovernmental immunity doctrine; is not

Page 1 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

153374604.1 0076593-00003

conflict preempted; does not burden a federal spending program; and does not violate the Takings Clause of the United States Constitution.

*Amici* submit this brief to explain why the Plaintiff AstraZeneca's unique arguments related to preemption and the Contracts Clause should be rejected.

## I.    H.B. 2385 IS NOT PREEMPTED BY FEDERAL PATENT LAW.

AstraZeneca relies on a misreading of the Federal Circuit case *Biotechnology Industry Organization (BIO) v. District of Columbia*, 496 F.3d 1362 (Fed. Cir. 2007), to support its claim that H.B. 2385 is preempted by federal patent laws. This argument has already been rejected by almost every district court to consider it. *AstraZeneca Pharms. LP v. Bailey*, 2025 WL 644285, at *2–3 (W.D. Mo. Feb. 27, 2025) (granting motion to dismiss on patent preemption claim); *Novartis v. Bailey*, 2025 WL 489881, at *2–3 (W.D. Mo. Feb. 13, 2025) (same).[1]

"The *BIO* case does not support AstraZeneca's conflict preemption argument based on federal patent law." *PhRMA v. Murrill*, 2024 WL 4361597, at *9. Unlike the law at issue in *BIO*, H.B. 2385 is *not* "targeted at the patent right," and it does not "appl[y] only to patented drugs." *Id.* (quoting *BIO*); *contra BIO*, 496 F.3d at 1374 ("The fact that the Act is targeted at the patent right is apparent on its face. It applies only to patented drugs."). That distinction alone defeats AstraZeneca's argument. *See PhRMA v. Murrill*, 2024 WL 4361597, at *9.

---

[1] *See also AstraZeneca v. Lopez*, 2026 WL 497141, at *16–17 (D. Haw. Feb. 23, 2026); *AstraZeneca v. Weiser*, 2025 WL 3653161, at *10–11 (D. Colo. Dec. 17, 2025); *AstraZeneca v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. Dec. 23, 2025), 664–65; *PhRMA v. Murrill*, 2024 WL 4361597, at *9 (W.D. La. Sept. 30, 2024); *Novartis v. Fitch*, 738 F. Supp. 3d 737, 753 (S.D. Miss. 2024); *but see AstraZeneca Pharms. LP v. Harris*, 4:24-cv-268 (Dkt. 142) (E.D. Ark. Sept. 30, 2025) at 12 (concluding on a motion for judgment on the pleadings that AstraZeneca "raised a right to relief above a speculative level").

Page 2 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Relatedly, according to the Federal Circuit, the determinative feature of the District of Columbia law at issue in *BIO* was that it penalized excessive prices for patented drugs—"and thus limit[ed] the full exercise of the exclusionary power that derives from a patent." 496 F.3d at 1374. In so doing, *BIO* held that the District of Columbia

> chose[] to re-balance the statutory framework of rewards and incentives insofar as it relates to inventive new drugs. In the District's judgment, patents enable pharmaceutical companies to wield too much exclusionary power, charging prices that are "excessive" for patented drugs. The Act is a clear attempt to restrain those excessive prices, in effect diminishing the reward to patentees in order to provide greater benefit to District drug consumers.

*Id*. H.B. 2385 has nothing to do with the exclusionary power associated with patent rights or the rewards associated with innovation and invention. Instead, it simply addresses where certain drugs are to be delivered once 340B hospitals already purchased them. *See supra* Part I.A.

On its face, in its practical effect, and in contrast to the statute at issue in *BIO*, H.B. 2385 "does not set or enforce discount pricing." *See PhRMA v. McClain*, 95 F.4th 1136, 1145 (8th Cir. 2024). Quite the contrary, the law addresses the "acquisition" by and "delivery" of prescription drugs to contract pharmacies. *See, e.g.*, *AbbVie v. Fitch*, 152 F.4th 635, 647 (5th Cir. 2025). Oregon "is simply deterring pharmaceutical manufacturers from interfering with a covered entity's contract pharmacy arrangements." *See PhRMA v. McClain*, 95 at 1145. Far from regulating pricing, H.B. 2385 "incorporates by reference" the independent federal scheme, which Oregon is free to do. *See Hillsborough Cnty. v. Auto. Med. Labs.*, 471 U.S. 707, 710 (1985); *PhRMA v. Murrill*, 2024 WL 4361597, at *9 ("As a condition of participating in Medicare and Medicaid, participating pharmaceutical companies agree to provide discounted drugs in the Section 340B program. These discounts are set by the federal government, not the State of Louisiana or [analogous state law]."). Because H.B. 2385 "does not purport to lower prices on any drugs not

Page 3 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

already discounted under Section 340B, it does not substantially interfere with the incentives created by patent laws or other federal laws establishing regulatory exclusivities." *Novartis v. Fitch*, 738 F. Supp. 3d at 753. Put another way, Congress *already* concluded that 340B pricing appropriately balances "rewards and incentives" for drug companies. *See id.* H.B. 2385 takes that 340B congressionally-balanced price as given and instead only regulates drug *delivery*.

Finally, *BIO* did not hold that states are barred from enacting laws that touch upon patented drugs, and in fact states retain their police powers with respect to patented products. *AstraZeneca v. Weiser*, 2025 WL 3653161, at *11. For example, they maintain the power to tax patented products, regulate commercial contracts involving patents, and regulate deceptive practices involving patents. *See, e.g.*, *Webber v. Virginia*, 103 U.S. 344, 347–48 (1880) ("Congress never intended that the patent laws should displace the police powers of the States . . . by which the health, good order, peace, and general welfare of the community are promoted."). At most, *BIO* stands for the obvious and straightforward proposition that a state cannot "change federal patent policy within its borders." 496 F.3d at 1374; *see Webber*, 103 U.S. at 347–48. Since Oregon did not come anywhere close to setting patent policy when it enacted H.B. 2385, the statute is not preempted by federal patent law.

## II.    H.B. 2385 DOES NOT VIOLATE THE CONTRACTS CLAUSE.

The Supreme Court's two-step analysis for Contracts Clause challenges requires first that a court determine whether the State law at issue substantially impairs a contractual relationship, and, if so, whether it did so for a legitimate purpose. *Sveen v. Melin*, 584 U.S. 811, 819 (2018). Under that analysis, Plaintiff's contracts claim fails.

Page 4 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH,
HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM
PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

153374604.1 0076593-00003

As to the first step, AstraZeneca is wrong that H.B. 2385 substantially impairs AstraZeneca's contractual relationship. *See AbbVie v. Murrill*, 166 F.4th 528, 544–47 (5th Cir. 2026). As an initial matter, AstraZeneca does not rely on a "contractual relationship" in any traditional sense, but rather a "pharmaceutical pricing agreement" ("PPA") with the Secretary of HHS that simply reflects its participation in the 340B program. Under the federal 340B statute, a drug manufacturer that participates in Medicaid and Medicare Part B is required to enter a PPA with the Secretary of HHS pursuant to which it must offer 340B covered entities outpatient drugs for purchase at or below a statutorily-determined discount price, referred to as the ceiling price. 42 U.S.C. § 256b(a)(1). The Supreme Court has explained that "the PPAs simply incorporate statutory obligations and record the manufacturers' agreement to abide by them. The form agreements, composed by HHS, contain no negotiable terms. . . . [T]he 340B Program agreements serve as the means by which drug manufacturers opt into the statutory scheme." *E.g.*, *Astra USA, Inc. v. Santa Clara Cnty.*, 563 U.S. 110, 118 (2011).

Even if a PPA could qualify as the sort of "contract" that the Contract Clause protects, Oregon's law does not implicate AstraZeneca's PPA at all. It operates in the very silence of that contract. It does not change or expand the definition of covered entities that are entitled to 340B discounts. Nor does it change what prices drug companies may charge covered entities. Rather, H.B. 2385 only affects the *delivery* of 340B drugs, which is not addressed in the PPA. Put another way, AstraZeneca is wrong to argue that its PPA "entitles it" to restrict delivery of its drugs in a manner that would violate H.B. 2385. Pl.'s Br. at 29. This Court therefore should follow the Fifth Circuit's well-reasoned decision, holding that an analogous state law did not substantially impair

Page 5 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

manufacturers' pharmaceutical pricing agreements (PPAs). *AbbVie v. Murrill*, 166 F.4th at 544–47.

Moreover, even if H.B. 2385 did substantially impair a contractual relationship between AstraZeneca and HHS, Oregon's legislature had a legitimate purpose in enacting it. The Supreme Court has "repeatedly held that unless the State is itself a contracting party, courts should properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 505 (1987) (cleaned up). Savings from 340B discounts allow covered entities to provide life-saving health care and programs in Oregon. H.B. 2385 only requires that drug companies continue to do what every pharmaceutical company participating in 340B did between 2010 and 2020—that is, provide the 340B discount to drugs purchased by patients of statutorily-defined covered entities, even when the covered entities rely on contract pharmacies to dispense those drugs. *See id.* Faced with the drug industry's synchronized assault on Oregon's health care safety net, the Oregon legislature had a significant and legitimate justification for passing H.B. 2385. The law only requires that hospitals be permitted to use contract pharmacies to dispense 340B drugs in the same manner that the drug companies permitted for many years and in the same manner that they use their own in-house pharmacies to dispense 340B drugs.

/ / /

/ / /

/ / /

Page 6 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## CONCLUSION

For the foregoing reasons, AstraZeneca's Motion for Summary Judgment should be denied,

and Defendants' Motion for Summary Judgment should be granted.

DATED:  July 14, 2026                            STOEL RIVES LLP


<u>    s/ Brad S. Daniels                    </u>
BRAD S. DANIELS, OSB No. 025178
brad.daniels@stoel.com

William B. Schultz*
Courtney Christensen*
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
Fax: (202) 822-8106
wschultz@zuckerman.com
cchristensen@zuckerman.com

Counsel for Amici Curiae
 *pro hac vice

Page 7 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH,
            HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM
            PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

153374604.1 0076593-00003

# Exhibit 1

Brad S. Daniels, OSB No. 025178
brad.daniels@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

William B. Schultz*
wschultz@zuckerman.com
Aaron Chou*
achou@zuckerman.com
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

*Attorneys for Amici Curiae The American Hospital
Association, 340B Health, Hospital Association of
Oregon, and American Society of Health-System
Pharmacists*
*admitted pro hac vice

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| NOVARTIS PHARMACEUTICALS CORPORATION, | Case No.:  3:25-cv-01330-IM |
| Plaintiff, | **BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| OREGON BOARD OF PHARMACY PRESIDENT RICHARD JOYCE, in his official capacity, *et al.*, | |
| Defendants. | |

BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882338.1 0076593-00003

Exhibit 1
Page 1 of 23

## TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* .................................................................... 1

INTRODUCTION ......................................................................................... 2

FACTUAL BACKGROUND ON THE IMPORTANCE OF ............................... 5

CONTRACT PHARMACY ARRANGEMENTS IN OREGON............................ 5

ARGUMENT ............................................................................................... 7

I.    H.B. 2385 Is Not Preempted. .............................................................. 7

    A.    Congress Did Not Create or Occupy a Field in the 340B Statute.................. 8

    B.    H.B. 2385 Does Not Conflict with the 340B Statute ......................... 9

        1.   H.B. 2385 Fills the Federal Statute's Silence Regarding Delivery......... 10

        2.   H.B. 2385 Does Not Conflict With 340B's Enforcement Regime. ......... 13

II.   H.B. 2385 Does Not Violate the Dormant Commerce Clause ............ 15

CONCLUSION............................................................................................ 16

Page i –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
            IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882338.1 0076593-00003

Exhibit 1
Page 2 of 23

# TABLE OF AUTHORITIES

**CASES**

*AbbVie Inc. v. Brown*,
   No. 25-cv-271, 2025 WL 3228898 (D. Utah Nov. 19, 2025)........................................................ 9

*AbbVie Inc. v. Drummond*,
   --- F. Supp. 3d ----, 2025 WL 3048929 (W.D. Okla. Oct. 31, 2025)........................... 12, 13, 15

*AbbVie Inc. v. Fitch*,
   152 F.4th 635 (5th Cir. 2025) ...................................................................................... *passim*

*AbbVie Inc. v. Skrmetti*,
   2025 WL 1805271 (M.D. Tenn. June 30, 2025).................................................................... 4, 13

*AbbVie v. Fitch*,
   No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965 (S.D. Miss. July 22, 2024)........................ 11

*AbbVie, Inc. v. Weiser*,
   No. 25-cv-1847-WJM-KAS, 2025 WL 3041825 (D. Colo. Oct. 31, 2025) ............................ 13

*Am. Hosp. Ass'n v. Azar*,
   967 F.3d 818 (D.C. Cir. 2020) ............................................................................................... 10

*Am. Hosp. Ass'n v. Becerra*,
   596 U.S. 724 (2022)................................................................................................................. 6

*Am. Hosp. Ass'n v. Hargan*,
   289 F. Supp. 3d 45 (D.D.C. 2017) ......................................................................................... 10

*Association for Accessible Medicines v. Ellison*,
   140 F.4th 957 (8th Cir. 2025) ................................................................................................ 16

*Astra USA, Inc. v. Santa Clara County*,
   563 U.S. 110 (2011)................................................................................................................ 15

*AstraZeneca Pharms. LP v. Bailey*,
   No. 2:24-cv-4143-MDH, 2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ................................... 4

*AstraZeneca Pharms. LP v. Fitch*,
   No. 1:24-cv-196-LG-BWR, 2024 WL 5345507 (S.D. Miss. Dec. 23, 2024)............................ 4

*AstraZeneca Pharms. LP v. Weiser*,
   No. 25-cv-2685, 2025 WL 3653161 (D. Colo. Dec. 17, 2025) ................................ 4, 11, 12, 13

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
   520 U.S. 564 (1997)................................................................................................................. 5

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582, 607 (2011)................................................................................ 9, 14

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) ............................................................................ 5

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992)............................................................................................. 8

*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*,
536 U.S. 424 (2002)............................................................................................. 8

*Conway v. United States*,
997 F.3d 1198 (Fed. Cir. 2021)........................................................................... 5

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987)............................................................................................. 10

*Foad Consulting Grp., Inc. v. Azzalino*,
270 F.3d 821 (9th Cir. 2001)............................................................................... 5

*Hines v. Davidowitz*,
312 U.S. 52 (1941)............................................................................................... 9

*Iowa, Chi. & E. R.R. Corp. v. Washington Cnty.*,
384 F.3d 557 (8th Cir. 2004) .............................................................................. 5

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996)......................................................................................... 4, 8

*National Pork Producers Council v. Ross*,
598 U.S. 356 (2023)..................................................................................... 16, 17

*Novartis Pharms. Corp. v. Fitch*,
738 F. Supp. 3d 737 (S.D. Miss. 2024)............................................................... 4

*Novartis Pharms. Corp. v. Frey*,
1:25-cv-407-JCN, (D. Me. Sept. 23, 2025)......................................................... 4

*Novartis Pharms. Corp. v. Johnson*,
102 F.4th 452 (D.C. Cir. 2024)....................................................................... 3, 10

*Novartis Pharms. Corp. v. Bailey*,
No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ...... 4, 13, 16

*Novartis Pharms. Corp. v. Frey*,
1:25-cv-00407, 1:25-cv-00416, 2025 WL 2813787 (D. Me. Sept. 23, 2025) ......... 11

*Paul v. Monts,*
    906 F.2d 1468 (10th Cir. 1990) ................................................................................. 5

*PhRMA v. Fitch,*
    2024 WL 3277365 (S.D. Miss. July 1, 2024) ................................................... 11, 16

*PhRMA v. McClain,*
    95 F.4th 1136 (8th Cir. 2025) ..................................................................... *passim*

*PhRMA v. Murrill,*
    No. 6:23-cv-997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024) ...................... *passim*

*PhRMA v. Walsh,*
    538 U.S. 644 (2003) ................................................................................................. 8

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health,*
    699 F.3d 962985 (7th Cir. 2011) ............................................................................. 5

*Sanofi Aventis U.S. LLC v. HHS,*
    58 F.4th 696 (3d Cir. 2023) .................................................................................... 3

*Schafer v. Am. Cyanamid Co.,*
    20 F.3d 1 (1st Cir. 1994) ......................................................................................... 5

**STATUTES**

42 U.S.C. § 256b ........................................................................................................ 10

Or. Rev. Stat. § 468B.030 .......................................................................................... 15

**OTHER AUTHORITIES**

340B Health,
    *Drugmakers Pulling $8 Billion Out of Safety-Net Hospitals: More Expected as
    Growing Number Impose or Tighten 340B Restrictions* ............................................. 7

340B Health,
    *Restrictions on 340B Contract Pharmacy Increase Drug Company Profits but
    Lead to Lost Savings, Patient Harm, and Substantial Burden for Safety-Net Hospitals* ........ 6, 8

Adam J. Fein,
    Drug Channels Institute, *Insurers + PBMs + Specialty Pharmacies + Providers:
    Will Vertical Consolidation Disrupt Drug Channels in 2020?* (Dec. 12, 2019) ........................ 7

Adam J. Fein,
    Drug Channels Institute, *The 2022 Economic Report on U.S. Pharmacies and
    Pharmacy Benefit Managers* (Mar. 2022) ............................................................... 8

Page iv –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
           IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

American Hospital Association,
*Fact Sheet: 340B Drug Pricing Program Contract Pharmacy Arrangements* (Jan. 2025)........ 7

Br. for Appellee Novartis Pharms. Corp.,
*Novartis Pharms. Corp. v. Johnson*, No. 21-5299, 2022 WL 2072941
(D.C. Cir. June 8, 2022) .......................................................................................................... 2

House Bill 2385 ..................................................................................................................... *passim*

H.R. Rep. No. 102–384(II) (1992) ............................................................................................ 10

Letter from Dep't of Health & Hum. Servs., Health Resources & Servs. Admin.
Administrator C. Johnson to AbbVie, Inc. Vice Pres., U.S. Market Access C.
Compisi (Oct. 17, 2022) ........................................................................................................... 2

Specialty Drug Coverage and Reimbursement in Medicaid, HHS Office of
Inspector General ..................................................................................................................... 7

Page v –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Exhibit 1

Page 6 of 23

## INTEREST OF *AMICI CURIAE*

*Amici* and their members are committed to improving the health of the communities they serve through the delivery of high-quality, efficient, and accessible health care. The discounts provided by the 340B program are essential to achieving this goal. *Amici* therefore have a strong interest in the success of Oregon's legislative efforts to protect the 340B program.

The **American Hospital Association** (AHA) represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations nationwide. AHA members are committed to helping ensure that healthcare is available to and affordable for all Americans. AHA promotes the interests of its members by participating as *amicus curiae* in cases with important and far-ranging consequences, including cases related to the 340B program.

**340B Health** is a national, not-for-profit organization founded in 1993 to advocate for 340B hospitals—a vital part of the nation's healthcare safety net. 340B Health represents over 1,600 public and private nonprofit hospitals and health systems participating in the 340B program.

The **Hospital Association of Oregon** (HAO) represents 61 community hospitals in Oregon and strives to create a strong and healthy Oregon by working to ensure communities have access to the care they need when they need it. As the collective voice of the state's 61 hospitals, HAO's focus is on advancing policies that address hospitals' current and long-term needs to sustain a health care system that generations of Oregonians can rely on.

The **American Society of Health-System Pharmacists** (ASHP) is the largest association of pharmacy professionals in the United States. ASHP advocates and supports the professional practice of pharmacists in hospitals, health systems, ambulatory care clinics, and other settings spanning the full spectrum of medication use. For over 80 years, ASHP has championed innovation

Page 1 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882338.1 0076593-00003

Exhibit 1
Page 7 of 23

in pharmacy practice, advanced education, and professional development, and has served as a steadfast advocate for members and patients.

**INTRODUCTION**

Five years ago, nearly 40 drug companies, including Plaintiff Novartis Pharmaceuticals Corporation (Novartis), broke with decades of precedent and suddenly restricted the shipment of drugs purchased by 340B hospitals to contract pharmacies. The contract pharmacy arrangements that drug companies honored for almost thirty years helped sustain hospitals and their patients. When drug companies announced their plan, the Department of Health and Human Services (HHS) determined that it was unlawful and directed manufacturers to continue delivering those drugs to contract pharmacies on the same terms to which they delivered those drugs to 340B in-house hospital pharmacies.[1]

The manufacturers resisted and challenged HHS in court. In one of those cases, Novartis argued that "[s]ection 340B, 42 U.S.C. § 256b, requires pharmaceutical manufacturers to offer discounted drugs to covered entities for purchase. It is *silent* as to whether manufacturers must deliver those drugs to contract pharmacies." Br. for Appellee Novartis Pharms. Corp. at 4, *Novartis Pharms. Corp. v. Johnson*, No. 21-5299, 2022 WL 2072941 (D.C. Cir. June 8, 2022) (emphasis added). Novartis made this statement to the United States Court of Appeals for the D.C. Circuit only three years ago when faced with the federal government's attempt to penalize the company's harsh restrictions on contract pharmacy arrangements. In lawsuit after lawsuit, at no point did Novartis or its sister drug companies describe their contract pharmacy policies as price restrictions.

---

[1] *See, e.g.*, Letter from Dep't of Health & Hum. Servs., Health Resources & Servs. Admin. Administrator C. Johnson to AbbVie, Inc. Vice Pres., U.S. Market Access C. Compisi (Oct. 17, 2022), https://www.hrsa.gov/sites/default/files/hrsa/opa/programintegrity/hrsa-letter-abbvie-covered-entities.pdf.

Page 2 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
            IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Exhibit 1
Page 8 of 23

Instead, they insisted that their policies were permissible because (1) they were *delivery* restrictions, and (2) the 340B statute had absolutely nothing to say about *delivery*. And two Circuit Courts adopted their position. *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024) (Section 340B is "silent about delivery conditions"); *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703, 707 (3d Cir. 2023) (Section 340B's "text is silent about delivery" and "[l]egal duties do not spring from silence.").

Like many other states, Oregon has filled the federal statutory gap that Novartis spent years fighting for by requiring drug companies to deliver drugs to 340B entities' contract pharmacies on the same terms as they deliver those drugs to 340B entities' in-house pharmacies. Faced with the drug industry's unprecedented assault on Oregon's health care safety net and the acknowledged gap in federal law, the Oregon legislature enacted House Bill 2385 (H.B. 2385) (attached hereto as Exhibit 1). H.B. 2385 does what Novartis and the federal courts said the *federal* law did not do: regulate the delivery of 340B drugs. Section 1(2)(a) states that a manufacturer may not "[d]eny, restrict, prohibit or otherwise interfere . . . with the acquisition of a 340B drug, delivery of a 340B drug to or dispensation of a 340B drug by a pharmacy . . . unless the acquisition delivery or dispensation is prohibited by [HHS]." Essentially, this provision prohibits manufacturers from preventing Oregon hospitals from contracting with outside pharmacies to dispense 340B discounted drugs.

Now comes the whiplash. After banking its prior wins, Novartis now claims that H.B. 2385 regulates price, not delivery. Even though Oregon legislated in precisely the area that Novartis successfully insisted in prior litigation was *not* addressed under federal law—the delivery of 340B drugs—Novartis has reversed course in this litigation to claim that H.B. 2385 is preempted by

Page 3 –  BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
 IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882338.1 0076593-00003

Exhibit 1
Page 9 of 23

federal law. And as part of that about-face, Novartis now insists that States cannot fill the federal statutory gap that drug companies (including Novartis) spent years fighting for.

This history is important—and not just because it exposes the hypocrisy in Novartis's legal position. It also serves as a reminder of *why* Oregon chose to step into the federal statutory void. Oregon acted because Novartis, its sister drug companies, and the federal courts all but invited it to do so.

The primary issue here is whether Oregon, exercising its historic police power over health and safety, can fill the gap in the federal 340B statute and regulate the delivery of 340B drugs (purchased by 340B hospitals) to contract pharmacies. It can, as has been held by numerous district courts,[2] as well as the only Courts of Appeals to date that have addressed drug industry challenges to state contract pharmacy statutes. *See PhRMA v. McClain*, 95 F.4th 1136, 1143–45 (8th Cir. 2025), *cert. denied*, 145 S. Ct. 768 (2024); *AbbVie Inc. v. Fitch*, 152 F.4th 635, 645–48 (5th Cir. 2025).

At its core, Novartis's attack on H.B. 2385 is an attack on federalism itself. Novartis tries to transform federal statutory silence into a reason to displace "the historic primacy of state regulation of matters of health and safety." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). That is not the law in this Circuit. *See, e.g.*, *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1143 (9th Cir. 2015) ("Silence, without more, does not preempt—'a clear and manifest

---

[2] *See, e.g.*, *AstraZeneca Pharms. LP v. Weiser*, No. 25-cv-2685, 2025 WL 3653161, at *7–9 (D. Colo. Dec. 17, 2025); *Novartis Pharms. Corp. v. Frey*, 1:25-cv-407-JCN, (D. Me. Sept. 23, 2025), *appeal filed*, No. 25-1908 (1st Cir.); *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271, at *16 (M.D. Tenn. June 30, 2025); *AstraZeneca Pharms. LP v. Bailey*, No. 2:24-cv-4143-MDH, 2025 WL 644285 (W.D. Mo. Feb. 27, 2025); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131-MDH, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025); *AstraZeneca Pharms. LP v. Fitch*, No. 1:24-cv-196-LG-BWR, 2024 WL 5345507 (S.D. Miss. Dec. 23, 2024); *PhRMA v. Murrill*, No. 6:23-cv-997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024).

Page 4 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
           IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

purpose of pre-emption is always required.'"); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("As a general matter, we rely on state law to fill in the gaps Congress leaves in federal statutes . . . . Thus, where the Copyright Act does not address an issue, we turn to state law to resolve the matter, so long as state law does not otherwise conflict with the Copyright Act."). Nor is it the law elsewhere.[3] This Court should reject Novartis's claims seeking to undermine Oregon's lawful exercise of traditional state authority.

## FACTUAL BACKGROUND ON THE IMPORTANCE OF CONTRACT PHARMACY ARRANGEMENTS IN OREGON

Novartis spends page after page maligning the 340B Program and the covered entities that rely on it. Needless to say, it is in its financial interest to do so. For Novartis, every 340B drug it refuses to deliver to an Oregon contract pharmacy is an additional profit line on its balance sheets.

But this is not how the Supreme Court has viewed the program. As Justice Kavanaugh wrote for a unanimous Supreme Court just a few years ago: "340B hospitals perform valuable

---

[3] *See, e.g.*, *PhRMA v. McClain*, 95 F.4th at 1143–45; *AbbVie v. Fitch*, 152 F.4th at 646; *Conway v. United States*, 997 F.3d 1198, 1211 (Fed. Cir. 2021) ("Congress' silence is powerful evidence that Congress did not intend to preempt state law fixing creditors' rights during insolvency.") (internal quotation marks and citation omitted); *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 985 (7th Cir. 2011) ("As we have noted, congressional and regulatory silence usually *defeats* a claim of preemption, not the other way around.") (emphasis in the original); *Iowa, Chi. & E. R.R. Corp. v. Washington Cnty.*, 384 F.3d 557, 561 (8th Cir. 2004) ("ICCTA did not address these problems. Its silence cannot reflect the requisite clear and manifest purpose of Congress to preempt traditional state regulation of public roads and bridges that Congress has encouraged in numerous other statutes. (quotation marks omitted)); *Schafer v. Am. Cyanamid Co.,* 20 F.3d 1, 6 (1st Cir. 1994) ("Pre-emption law, for example, cautions us against finding that a congressional act pre-empts a state law through silence.") (citation omitted); *Paul v. Monts,* 906 F.2d 1468, 1475 n.8 (10th Cir. 1990) ("Congressional silence will not be presumed to mandate preemption. On the contrary, it will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so.") (quotation marks omitted); *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616 (1997) (Thomas, J., dissenting) ("Even where Congress has legislated in an area subject to its authority, our pre-emption jurisprudence explicitly rejects the notion that mere congressional silence on a particular issue may be read as preempting state law.").

Page 5 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
             IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

services for low-income and rural communities but have to rely on limited federal funding for support." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022). And more significant here, the Oregon legislature, with an interest in protecting its citizens, hospitals, and pharmacies, shares the Supreme Court's view of the Program. When enacting H.B. 2385, the Oregon legislature recognized the importance of the 340B Program to hospitals and Oregonians.

For good reason. The contract pharmacy arrangements that Novartis honored for almost thirty years helped sustain hospitals and their patients. Nationwide, a quarter of hospitals' 340B savings come from drugs dispensed at contract pharmacies.[4] The drug industry's efforts to stop 340B hospitals from relying on contract pharmacies has hurt 340B hospitals and adversely affected their ability to serve Oregon's most vulnerable patients.

These effects have been seen nationwide, where drug companies' abusive tactics have negatively impacted 340B hospitals' ability to stretch their scarce resources to provide more affordable access to care. A 2022 AHA survey found that these actions are resulting in over $500 thousand in average annual losses to Critical Access Hospitals, while Disproportionate Share Hospitals are losing an average of nearly $3 million every year. As more drug companies impose more restrictions, these losses are exponentially increasing, with many reporting tens of millions in losses.[5]

---

[4] 340B Health, *Restrictions on 340B Contract Pharmacy Increase Drug Company Profits but Lead to Lost Savings, Patient Harm, and Substantial Burden for Safety-Net Hospitals* 8, https://www.340bhealth.org/files/Contract_Pharmacy_Survey_Report_March_2023.pdf.

[5] American Hospital Association, *Fact Sheet: 340B Drug Pricing Program Contract Pharmacy Arrangements* (Jan. 2025), https://www.aha.org/fact-sheets/2020-10-06-fact-sheet-340b-drug-pricing-program-contract-pharmacy-arrangements.

Page 6 –     BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
            IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882338.1 0076593-00003

Exhibit 1
Page 12 of 23

Contract pharmacy arrangements are especially important because fewer than half of 340B hospitals operate in-house pharmacies.[6] Even fewer—only one in five 340B hospitals—have in-house "specialty" pharmacies, which many insurers require for the dispensing of "specialty" drugs. These drugs are typically used to treat chronic, serious, or life-threatening conditions, and are generally priced much higher than non-specialty drugs.[7] Thus, 340B hospitals typically *must* contract with at least one specialty pharmacy outside of their in-house pharmacies.[8] Denied these and other 340B savings associated with contract pharmacies as a result of manufacturers' delivery restrictions, 340B hospitals have been forced to cut critical programs and services.[9]

## ARGUMENT

### I.    H.B. 2385 Is Not Preempted.

The purpose of Congress is the "ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citation omitted). In every preemption case, "and particularly in those in which Congress has 'legislated in a field which the States have traditionally occupied,'" *Lohr*, 518 U.S. at 485, courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest

---

[6]    340B Health, *Drugmakers Pulling $8 Billion Out of Safety-Net Hospitals: More Expected as Growing Number Impose or Tighten 340B Restrictions* 2, https://www.340bhealth.org/files/Contract_Pharmacy_Financial_Impact_Report_ July_2023.pdf.

[7]    Adam J. Fein, Drug Channels Institute, *Insurers + PBMs + Specialty Pharmacies + Providers: Will Vertical Consolidation Disrupt Drug Channels in 2020?* (Dec. 12, 2019), https://www.drugchannels.net/2019/12/insurers-pbms-specialty-pharmacies.html; Specialty Drug Coverage and Reimbursement in Medicaid, HHS Office of Inspector General, https://oig.hhs.gov/reports-and-publications/workplan/summary/wp-summary-0000255.asp.

[8]    340B Health, *supra* note 4, at 7 (citing Adam J. Fein, Drug Channels Institute, *The 2022 Economic Report on U.S. Pharmacies and Pharmacy Benefit Managers* (Mar. 2022) https://drugchannelsinstitute.com/files/2022-PharmacyPBM-DCI-Overview.pdf).

[9]    *Id.*, 340B Health at 2, 5.

Page 7 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

purpose of Congress," *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 432 (2002); *see PhRMA v. McClain*, 95 F.4th at 1140. That is "particularly" true in "matters of health," given "the historic primacy of state regulation" in that area. *Lohr*, 518 U.S. at 485; *PhRMA v. McClain*, 95 F.4th at 1140. Novartis cannot satisfy its "burden of overcoming th[e] presumption" against preemption. *See PhRMA v. Walsh*, 538 U.S. 644, 662 (2003).

### A.    Congress Did Not Create or Occupy a Field in the 340B Statute.

Novartis's field-preemption theory both misapplies the relevant standard and mischaracterizes the 340B statute. It has been rejected by every Court to consider it, including the Eighth and Fifth Circuits. *PhRMA v. McClain*, 95 F.4th at 1144; *AbbVie v. Fitch*, 152 F.4th at 646. In rejecting PhRMA's challenge to an analogous state law, the Eighth Circuit clearly stated that "we conclude that in enacting Section 340B, Congress did not intend to preempt the field." *PhRMA v. McClain*, 95 F.4th at 1144; *id.* ("Congress's decision not to legislate the issue of pharmacy distribution indicates that Section 340B is not intended to preempt the field."). The Fifth Circuit reached the same conclusion, explaining that "Section 340B does not 'provide a full set of standards governing' discounted drugs for needy patients . . . . Notably, it regulates neither the distribution of drugs to patients nor the role of pharmacies in this distribution." *AbbVie v. Fitch*, 152 F.4th at 646. Further, every district court to consider analogous field preemption arguments has handily rejected them. *See, e.g.*, *PhRMA v. Murrill*, 2024 WL 4361597, at *8 ("Section 340B is silent with respect to contract pharmacies, and Plaintiffs have not pointed to any provisions in the statutes governing the Medicare or Medicaid programs that address [contract] pharmacies"). This Court should do the same.

**B.      H.B. 2385 Does Not Conflict with the 340B Statute**

The Court also should follow the growing chorus of district and appellate courts that have rejected Novartis's conflict preemption theories. *E.g., PhRMA v. McClain*, 95 F.4th at 1144–45; *AbbVie v. Fitch*, 152 F.4th at 647–48.[10] Novartis's arguments fail because it cannot meet the "high threshold," *Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 607 (2011), for showing that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

The 340B statute was enacted to help covered healthcare providers "'reach[] more eligible patients and provid[e] more comprehensive services.'" *Am. Hosp. Ass'n v. Hargan*, 289 F. Supp. 3d 45, 47 (D.D.C. 2017) (quoting H.R. Rep. No. 102–384(II), at 12 (1992)); *see Am. Hosp. Ass'n v. Azar*, 967 F.3d 818, 822 (D.C. Cir. 2020). Consistent with that purpose, H.B. 2385 enables 340B providers to continue to utilize contract pharmacy arrangements and thereby to offer expanded healthcare services to their patients. Thus, "[H.B. 2385] assists in fulfilling the purpose of 340B." *E.g.*, *PhRMA v. McClain*, 95 F.4th at 1144–45; *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 83 (1987).

Novartis proffers several ways in which H.B. 2385 purportedly conflicts with the federal 340B statute. Each of Novartis's arguments fails.

---

[10] A Utah district court recently declined to dismiss drug manufacturers' preemption claims. *AbbVie Inc. v. Brown*, No. 25-cv-271, 2025 WL 3228898 (D. Utah Nov. 19, 2025) (denying in part motion to dismiss). In addition to being legally incorrect, the *Brown* Court's preemption analysis turned on a provision of that law (not present here) that empowered contract pharmacies to buy drugs at 340B prices (other laws require that 340B drugs be purchased by 340B providers which may have them delivered by contract pharmacies).

Page 9 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
            IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.     H.B. 2385 Fills the Federal Statute's Silence Regarding Delivery.

Novartis's argument that H.B. 2385 expands the scope of 340B's federal requirements is "simply incorrect." *AbbVie v. Fitch*, 152 F.4th at 647 (rejecting a similar argument challenging analogous state law). There are no federal requirements regarding delivery. *Novartis v. Johnson*, 102 F.4th at 46–62. The federal 340B statute dictates what price manufacturers must offer (the "ceiling price") and to whom (340B "covered entities"). 42 U.S.C. § 256b. H.B. 2385 does not alter either requirement. *See AbbVie v. Fitch*, 152 F.4th at 647 (concluding that an analogous state statute merely "requires drug manufacturers to give custody of discounted drugs to contract pharmacies only insofar as they have partnered with covered entities to distribute the drugs to patients").

Instead, H.B. 2385 sets forth Oregon's own requirements, with their own consequences. The law provides that a drug company may not limit "the acquisition of a 340B drug, delivery of a 340B drug to or dispensation of a 340B drug by a pharmacy that has contracted with a covered entity to receive and dispense 340B drugs on behalf of the covered entity in this state unless the acquisition delivery or dispensation is prohibited by the [HHS]." H.B. 2385 § 1(2)(a). Put another way, H.B. 2385 bars drug companies from discriminating against Oregon 340B hospitals based on their chosen delivery location, without altering the federal pricing requirements in any way. *AstraZeneca v. Weiser*, 2025 WL 3653161, at *8 ("Section 340B [] sets the price of the discounted drugs; [H.B. 2385] merely dictates that those drugs must be made available at more locations, namely, at unlimited contract pharmacies"). H.B. 2385 requires drug companies to allow covered entities to be treated like any other purchaser of drugs, with the same freedom to select where their drugs will be shipped. *See PhRMA v. Fitch*, 2024 WL 3277365, at *11 (S.D. Miss. July 1, 2024) ("Congress has not precluded Mississippi from enacting its own policy governing delivery of

Page 10 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882338.1 0076593-00003

Exhibit 1
Page 16 of 23

Section 340B drugs."). It "does not set or enforce discount pricing." *McClain*, 95 F.4th at 1145; *see PhRMA v. Murrill*, 2024 WL 4361597, at *9 ("[D]iscounts are set by the federal government.").

Nothing about the replenishment model alters this conclusion, despite what Novartis asserts. *See* ECF No. 27-1, Novartis's Declaration of Shannon McCrudden ¶¶ 12–14. The replenishment model is an inventory management system that "relies on pharmaceuticals' fungibility to facilitate efficiency." *AbbVie v. Fitch*, No. 1:24-cv-184-HSO-BWR, 2024 WL 3503965, at *14 (S.D. Miss. July 22, 2024). As a district court in Maine recently explained:

> The replenishment model works as follows: (1) The pharmacy purchases a quantity of a drug at market price and maintains it in common inventory; (2) the pharmacy dispenses drugs from the common inventory whenever a customer arrives with a prescription without regard to whether the customer is a patient of a covered entity; (3) an administrator later reviews claims data to analyze which transactions were for covered drugs to a patient of a covered entity and thus eligible for the discount; and (4) after enough qualifying transactions have occurred, the covered entity orders more units of the drug at the discounted price to replenish the units dispensed to patients of the covered entity.

*Novartis Pharms. Corp. v. Frey*, Nos. 1:25-cv-00407, 1:25-cv-00416, 2025 WL 2813787, at *3 (D. Me. Sept. 23, 2025).

Thus, this inventory management system ensures that 340B covered entities only receive the federal statutory discount for drugs dispensed to eligible patients. The 340B hospital would pay *that exact same price* if it were replenishing inventory at its hospital pharmacy after a patient received the drug. Replenishment would happen whether the 340B drug is delivered to the hospital's in-house pharmacy *or* the hospital's contract pharmacy. And that is all Oregon's law addresses: *where* drug companies must deliver those drugs that are purchased by Oregon's 340B hospitals. *See AstraZeneca v. Weiser,* 2025 WL 3653161, at *8 (finding that the "replenishment model is a means of efficient distribution, and [manufacturers'] argument reflects a 'technicality,' which does not suddenly make [analogous Colorado law] a regulation of price").

Page 11 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

For these reasons, *Amici* respectfully submit that the Western District of Oklahoma's recent decision, on which Novartis relies, was wrongly decided. *See* Novartis Mem. in Supp. of Mot. for Summary Judgment (Novartis Mem.) (ECF No. 27) at 17, 21–22, 27 (citing *AbbVie Inc. v. Drummond*, --- F. Supp. 3d ----, 2025 WL 3048929 (W.D. Okla. Oct. 31, 2025)). Critically, the Oklahoma court's decision turned on a hypothetical that fails on its own terms:

> [I]magine if Congress passed a law requiring pizza parlors to sell pizzas at a 50% discount to anyone named John. If a state then passed a law requiring those pizza parlors to also deliver half-priced pies to any other person that John told them to, could that state law possibly be described as a mere "delivery" regulation? Of course not; the effect of the law is to reduce the price of pies that would otherwise be sold to non-John's at full price. That's a law regulating pricing, and H.B. 2048 is just that kind of law.

*AbbVie v. Drummond*, 2025 WL 3048929 at *5. The hypothetical actually demonstrates why Oklahoma's law (and Oregon's law) regulates delivery and not price. For 340B drugs, it is the hospital or other 340B provider that purchases the drug, and it is the 340B provider's patients that use the drug. The only difference between a 340B drug delivered to a pharmacy outside the hospital and picked up by the 340B patient there, and a 340B drug delivered to a hospital pharmacy and picked up by the patient there, is the place of delivery. In contrast, in the Oklahoma court's hypothetical, while Congress required that pizzas be sold to persons named John at half price, the state law had the effect of the pizza being sold to (and paid for by) people not named "John" at half price. In the real-world 340B context, only "John," *i.e.*, the 340B hospital, is purchasing drugs at the reduced price and directing delivery to either its in-house pharmacy or a contract pharmacy. Because neither Oklahoma's nor Oregon's law requires drug companies to sell 340B drugs to non-340B hospitals or non-340B patients, and because only 340B hospitals may purchase the drugs and only 340B patients may use them, there is no conflict with federal law. It is therefore unsurprising that the *Drummond* Court's conclusion that the Oklahoma law regulates pricing (not

Page 12 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

delivery) goes against the findings of most courts to consider this issue. *See, e.g.*, *PhRMA v. McClain*, 95 F.4th at 1145; *AstraZeneca v. Weiser*, 2025 WL 3653161, at *7–8; *AbbVie, Inc. v. Weiser*, No. 25-cv-1847-WJM-KAS, 2025 WL 3041825, at *10–11 (D. Colo. Oct. 31, 2025); *PhRMA v. Murrill*, 2024 WL 4361597, at *9; *AbbVie v. Skrmetti*, 2025 WL 1805271, at *18–19; *Novartis v. Bailey*, 2025 WL 489881, at *2.

This Court should reject Novartis's conflict preemption theories—just as the Eighth Circuit, Fifth Circuit, and numerous other courts have done in similar cases.

### 2.    H.B. 2385 Does Not Conflict With 340B's Enforcement Regime.

Novartis's argument in support of its contention that H.B. 2385 interferes with a unified 340B federal enforcement scheme also has been rejected by the Fifth and Eighth Circuits (and numerous district courts). *AbbVie v. Fitch*, 152 F.4th at 647; *McClain*, 95 F.4th at 1144. The statute strictly provides for the enforcement of *its own* requirements. *See* H.B. 2385 § 2(1). As the Eighth Circuit explained with respect to a similar Arkansas statute:

> Act 1103 ensures that covered entities can utilize contract pharmacies for their distribution needs and authorizes the Arkansas Insurance Division to exact penalties and equitable relief if manufacturers deny 340B drugs to covered entities' contract pharmacies. Ark. Code Ann. § 23-92-604(c). The 340B Program, on the other hand, addresses discount pricing. ***Therefore, HHS has jurisdiction over different disputes***: disputes between covered entities and manufacturers regarding pricing, overcharges, refunds, and diversion of 340B drugs to those who do not qualify for discounted drugs.

*PhRMA v. McClain*, 95 F.4th at 1144 (emphasis added). Because the State requirements are different from the federal requirements, the law does not conflict with the 340B program's enforcement regime.

Novartis also is wrong that the purportedly competing federal and state systems may result in conflicting interpretations of federal law. Because the Oregon statute regulates the delivery of a 340B drug that has been purchased by a 340B hospital, the question in any state action to enforce

Page 13 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
          IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

H.B. 2385 would be whether the manufacturer refused to *deliver* a drug purchased by a 340B hospital to a contract pharmacy. Any arguments that a drug was dispensed to a non-340B patient—known as "diversion"—or that the entity ordering drugs was ineligible for 340B discounts are for HHS and the federal forums, not the State. In other words, the issue of diversion is entirely outside the scope of the Oregon law.

To the extent hypothetical questions about whether a drug qualifies as a 340B drug arise, those are easily answered by reference to the federal 340B statute, which clearly lists which entities are permitted to purchase discounted drugs. And there is nothing improper about a state statute defining its reach by reference to federal law (and then imposing its own requirements)—or even a state statute whose regulatory object is a federal program. *See, e.g.*, *Whiting*, 563 U.S. at 607–08 (rejecting preemption challenge to state statute under which employers had to check their employees' *federal* immigration status using a specified *federal* database). Nor is it unusual for a state statute to expressly reference a federal program or statute in defining its reach. *See, e.g.*, Or. Rev. Stat. § 468B.030 (incorporating definition of "effluent limitations" from Federal Water Pollution Control Act).

The *Drummond* Court's view—that the state statute regulates price—is the same faulty premise that underpins the *Drummond* Court's conclusion that the Oklahoma law in that case creates a conflicting third-party enforcement scheme in violation of the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011). *See AbbVie Inc. v. Drummond*, 2025 WL 3048929 at *7. The *Drummond* Court's statement that the state regulators will be "questioning the price at which" a 340B drug was delivered to a contract pharmacy if a drug manufacturer refuses to deliver a 340B drug to a contract pharmacy, *id.*, is wrong. As explained above, H.B. 2385 strictly provides for the enforcement of *its own delivery* requirements—not the

pricing requirements of the federal 340B statute—and thus does not raise the possibility of conflicting enforcement decisions. The *Astra* Court's holding that "potentially thousands of" private parties could not sue to correct "errors in manufacturers' *price* calculations," *Astra,* 563 U.S. at 114 (emphasis added), has no bearing on whether States can fill gaps in federal law regarding the *delivery* of 340B drugs.[11] *See PhRMA v. Murrill*, 2024 WL 4361597, at *7 ("The [*Astra*] Court did not [] address the role of contract pharmacies—its ruling pertains solely to participating pharmaceutical companies, covered entities, and their compliance with the pricing requirements of the Section 340B program.").

## II.   H.B. 2385 Does Not Violate the Dormant Commerce Clause

Lastly, Novartis's assertion that H.B. 2385 violates the dormant Commerce Clause is squarely foreclosed by the Supreme Court's decision in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), and has been rejected by district courts evaluating similar efforts to enjoin state contract-pharmacy statutes. *See PhRMA v. Fitch*, 2024 WL 3277365, at *12–13; *Novartis v. Bailey*, 2025 WL 595189, at *3–5. Novartis complains that H.B. 2385 directly regulates extraterritorial conduct. But *National Pork Producers* flatly rejected the "almost *per se*" extraterritoriality rule that Novartis seeks, holding that the dormant Commerce Clause does *not* forbid "enforcement of state laws that have the 'practical effect of controlling commerce outside the State." *Nat'l Pork Producers*, 598 U.S. at 371.

Nonetheless, Novartis relies on *Association for Accessible Medicines v. Ellison*, 140 F.4th 957 (8th Cir. 2025), in an effort to suggest that the Oregon statute, like the Minnesota law at issue in that case, is unconstitutional because if effectively regulates the prices of drugs sold by out-of-

---

[11] Notably, *Astra* does not address preemption; the only mention of preemption in *Astra* is in a footnote concerning a different federal program—the Medicaid Drug Rebate Program. *See Astra*, 563 U.S. at 120 n.5.

Page 15 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
          IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882338.1 0076593-00003

Exhibit 1
Page 21 of 23

state wholesalers and manufacturers. Novartis Mem. at 29. But *Accessible Medicines* has no application to whether Oregon's statute violates the Commerce Clause. That case concerned Minnesota's statute that prohibited an "excessive price increase" on the sale of certain drugs, and the Eighth Circuit found that the statute had the "specific impermissible extraterritorial effect of controlling prices outside of Minnesota" because the generic drugs at issue were manufactured outside Minnesota where prices are set. *Accessible Medicines*, 140 F.4th at 958. Here—and in direct contrast to the statute at issue in *Accessible Medicines*—H.B. 2385 does not directly regulate drug purchases by entities outside Oregon. Instead, it regulates the delivery and shipment of 340B drugs to contract pharmacies within the state. *PhRMA v. McClain*, 95 F.4th at 1144.

Thus, whatever out-of-state effects Novartis may experience are *not* the result of H.B. 2385 directly regulating transactions with no connection to Oregon. Like "many (maybe most) state laws," H.B. 2385 may indirectly impact "extraterritorial behavior" for drug companies that are headquartered outside of Oregon. *Nat'l Pork Producers*, 598 U.S. at 374. But the statute does not *target* extraterritorial activity or privilege in-state actors over their out-of-state competitors; its prohibitions apply equally to drug manufacturers both in and out of state. This Court should reject Novartis's attempt to revive the "extraterritoriality doctrine" that the Supreme Court explicitly rejected. *See id.* at 371.

### CONCLUSION

For the foregoing reasons, Novartis's Motion for Summary Judgment should be denied, and Defendants' Motion for Summary Judgment should be granted.

Page 16 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
            IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DATED:  January 30, 2026                    STOEL RIVES LLP


                                    s/ Brad S. Daniels
                                    BRAD S. DANIELS, OSB No. 025178
                                    brad.daniels@stoel.com

                                    William B. Schultz*
                                    Aaron Chou*
                                    ZUCKERMAN SPAEDER LLP
                                    wschultz@zuckerman.com
                                    achou@zuckerman.com

                                    *Counsel for Amici Curiae*
                                    *admitted pro hac vice*

Page 17 –  BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
        IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882338.1 0076593-00003

                                                        Exhibit 1
                                                        Page 23 of 23

# Exhibit 2

Brad S. Daniels, OSB No. 025178
brad.daniels@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

William B. Schultz*
wschultz@zuckerman.com
Aaron Chou*
achou@zuckerman.com
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

*Attorneys for Amici Curiae The American Hospital
Association, 340B Health, Hospital Association of
Oregon, and American Society of Health-System
Pharmacists*
*admitted pro hac vice

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Dan RAYFIELD, in his official capacity as Attorney General of the State of Oregon, *et al.*,<br><br>Defendants. | Case No.:  3:25-cv-01754-IM<br><br>**BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882737.1 0076593-00003

Exhibit 2
Page 1 of 15

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I.  H.B. 2385 Is Not Preempted. .............................................................................. 1

    A.  H.B. 2385 Does Not Unlawfully Single Out a Federal Program ..................................... 2

    B.  H.B. 2385 Does Not Conflict with the 340B Statute ...................................................... 6

        1.  H.B. 2385 Does Not Conflict with the Federal Audit Process ............................. 6

        2.  H.B. 2385 Does Not Obstruct Participation in HRSA's Rebate Pilot ................... 7

CONCLUSION ........................................................................................................... 9

Page i –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882737.1 0076593-00003

Exhibit 2
Page 2 of 15

## TABLE OF AUTHORITIES

**CASES**

*AbbVie Inc. v. Fitch*,
  152 F.4th 635 (5th Cir. 2025) ............................................................................ 4

*AbbVie v. Skrmetti*,
  2025 WL 1805271 (M.D. Tenn. June 30, 2025)................................................... 7

*AbbVie, Inc. v. Jackley*,
  25-cv-3006, 2025 WL 3706066 (D.S.D. Dec. 22, 2025)..................................... 9

*AbbVie, Inc., et al. v. Weiser, et al.*,
  No. 25-CV-1847-WJM-KAS, 2025 WL 3041825 (D. Colo. Oct. 31, 2025) ................. 3, 4, 5, 9

*Am. Hosp. Ass'n v. Becerra*,
  596 U.S. 724 (2022)............................................................................................ 9

*Am. Hosp. Ass'n v. Kennedy*,
  No. 25-2236, 2026 WL 49499 (1st Cir. Jan. 7, 2026) ....................................... 8

*Am. Hosp. Ass'n v. Kennedy*,
  No. 25-2236, Doc. 118393061 (1st Cir. Jan. 20, 2026)..................................... 8

*Am. Hosp. Ass'n v. Kennedy*,
  No. 25-cv-600, 2025 WL 3754193 (D. Me. Dec. 29, 2025)................................ 8

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001)......................................................................................... 2, 3

*Forest Park II v. Hadley*,
  336 F.3d 724 (8th Cir. 2003) ......................................................................... 2, 3, 4

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).......................................................................................... 3

*Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*,
  156 F.4th 68 (2d Cir. 2025) .............................................................................. 9

*Novartis Pharms. Corp. v. Frey*,
  Nos. 1:25-cv-00407-JCN, 1:25-cv-00416-JCN, 2025 WL 2813787
  (D. Me. Sept. 23, 2025)...................................................................................... 2

*Novartis Pharms. Corp. v. Johnson*,
  102 F.4th 452 (D.C. Cir. 2024)......................................................................... 4

*Novartis v. Kennedy*,
   No. 25-5177 (D.C. Cir.) ............................................................................................... 8

*Or. Health & Sci. Univ. v. Engels*,
   2025 WL 1707630 (D.D.C. June 17, 2025) ............................................................... 6, 7

*Oregon Health & Science University v. Engels*,
   No. 1:24-cv-2184-RC (D.D.C.) .................................................................................. 6

*PhRMA v. Fitch*,
   2024 WL 3277365 (S.D. Miss. July 1, 2024) ............................................................ 5

*PhRMA v. McClain*,
   95 F.4th 1136 (8th Cir. 2025) ................................................................................... 5

*Rice v. Norman Williams Co.*,
   458 U.S. 654 (1982) .................................................................................................. 8

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) .................................................................................................. 3

*Sanofi Aventis U.S. LLC v. HHS*,
   58 F.4th 696 (3d Cir. 2023) ...................................................................................... 5

*University of Washington Med. Ctr. v. Becerra*,
   No. 1:24-cv-2998-RC (D.D.C.) .................................................................................. 6

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) .................................................................................................. 9

*Wyeth v. Levine*,
   555 U.S. 555 (2009) .................................................................................................. 3

**OTHER AUTHORITIES**

AstraZeneca Opening Br.,
   *AstraZeneca Pharms. L.P. v. HHS*, No. 22-1676 (3d Cir. July 21, 2022) .............................. 5

H.B. 2385 ........................................................................................................... *passim*

Medicare Drug Price Negotiation Program: Final Guidance, Implementation of
   Sections 1191 – 1198 of the Social Security Act for Initial Price Applicability
   Year 2027 and Manufacturer Effectuation of the Maximum Fair Price in 2026
   and 2027 ..................................................................................................... 8

Novartis Opening Brief,
   *Novartis Pharms. Corp. v. Johnson*, No. 21-5299, 2022 WL 2072941
   (D.C. Cir. June 8, 2022) ............................................................................... 5

Page iii –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
       IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**REGULATIONS**

ADR Rule,
  89 Fed. Reg. 28,643 (April 19, 2024) ...................................................................................... 6, 7

HRSA, *Manufacturer Audit Guidelines and Dispute Resolution Process*,
  61 Fed. Reg. 65,406 (Dec. 12, 1996) ........................................................................................ 6

Page iv –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
          IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882737.1 0076593-00003

Exhibit 2
Page 5 of 15

**INTRODUCTION**

*Amici* incorporate by reference the Amicus Brief of the American Hospital Association, *et al.*, filed in *Novartis Pharmaceuticals Corp. v. Joyce* (3:25-cv-1330-IM), which challenges the same law as the one challenged in this case, H.B. 2385, and which is also pending before this Court. That brief, attached hereto as Exhibit 1, explains: the history of drug companies' policies surrounding contract pharmacies (including the drug companies' change in position); the importance of contract pharmacy arrangements under the 340B program; that Congress did not create or occupy a field when it established the 340B program; and that H.B. 2385 is not conflict-preempted because it regulates only the delivery of 340B drugs (not price) and does not interfere with 340B's enforcement regime. It further shows why H.B. 2385 is not an extraterritorial regulation that violates the dormant Commerce Clause.

*Amici* submit this brief to explain why the unique arguments related to preemption made by Plaintiff Pharmaceutical Research and Manufacturers of America (PhRMA) in their challenge to H.B. 2385 should be rejected.

**ARGUMENT**

I.     **H.B. 2385 Is Not Preempted.**

This Court should reject PhRMA's preemption theories—just as numerous courts, including the Eighth and Fifth Circuits, have done in similar cases. For the reasons discussed in *Amici*'s brief filed in *Novartis v. Joyce* (3:25-cv-1330-IM), Ex. 1, PhRMA's arguments that H.B. 2385 is field preempted, conflicts with federal law by impermissibly expanding federal 340B obligations, and conflicts with the federal enforcement regime should be rejected. As explained below, PhRMA's arguments that H.B. 2385 (1) singles out a federal program for special

Page 1 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
           IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

regulation, (2) obstructs the federal statutory audit process, and (3) precludes participation in the Health Resource and Service Administration's (HRSA) rebate pilot program also fail.

### A. H.B. 2385 Does Not Unlawfully Single Out a Federal Program.

PhRMA argues that the "Supremacy Clause forbids Oregon from singling out participants in a federal program"—here the Medicaid and Medicare programs enacted under congressional Spending Power—"for special regulatory obligations." PhRMA Mem. in Supp. of Mot. for Summary Judgment (PhRMA Mem.) (ECF No. 32) at 18. This claim is meritless.

No authority supports PhRMA's argument. Plucking a single phrase out of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 347 (2001)—"originates from, is governed by, and terminates according to federal law"—PhRMA contends that states may not directly regulate on subjects that fall within the of reach of any federal program, particularly one enacted pursuant to Congress's Spending Power. As far as *Amici* can determine, neither the Supreme Court nor any other federal court has endorsed such a far-reaching proposition in *any* context. As one court recently explained in evaluating a challenge to an analogous state law, "[t]he Supreme Court, however, has never adopted a categorical rule that requires a finding of preemption whenever a state law is addressed directly to those participating in a federal program where the federal statute does not rely on the state to implement the program." *Novartis Pharms. Corp. v. Frey*, Nos. 1:25-cv-00407-JCN, 1:25-cv-00416-JCN, 2025 WL 2813787, at *10 (D. Me. Sept. 23, 2025), *appeal filed*, No. 25-1908 (1st Cir.). It is therefore no surprise that the cases PhRMA cites do not come close to supporting such a sweeping rule.

The holdings in *Buckman* and *Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003), are far narrower than PhRMA claims. *Buckman* did not find preemption of state law simply because it involved a federal program. Instead, *Buckman* held that "[p]olicing fraud against federal agencies

is hardly 'a field which the States have traditionally occupied." *Buckman*, 531 U.S. at 347 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). By contrast, the Supreme Court itself has distinguished *Buckman* on these exact grounds. In *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009), the Court explained: "[T]he dissent's reliance on *Buckman Co. v. Plaintiffs' Legal Comm.* [] is especially curious, as that case involved state-law fraud-on-the-agency claims, and the Court distinguished state regulation of health and safety as matters to which the presumption does apply." Like *Wyeth*, this case indisputably involves matters of health and safety—issues that fall squarely within a state's historic police powers. *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (holding that States may regulate within the interstices of federal law, particularly where that gap exists in an area of historic primacy of state regulation like health and safety). Even more to the point, it involves a particular aspect of health and safety—drug delivery and pharmacies—where the 340B statute is silent. *Buckman* is therefore inapposite.

*Forest Park II* also involved a fundamentally different federal interest. There, the Court considered whether "[a] private participant in a federal housing program who seeks to withdraw from participation pursuant to the provisions of that program permitting withdrawal [could be] prohibited by a state law from taking the action that the federal government has otherwise authorized." 336 F.3d at 731–32. The Court determined that the case involved "unique federal laws and programs" that meant the "traditional preemption analysis" did not apply and there was "no presumption against preemption." *Id.* at 731. Again, that unique federal interest in *Forest Park II* is a far cry from matters of health and safety that are traditionally regulated by the States, as Oregon did here with H.B. 2385. Thus, taking PhRMA's argument on its own flawed terms, the absence of a uniquely federal interest is fatal. *See AbbVie, Inc., et al. v. Weiser, et al.*, No. 25-CV-1847-WJM-KAS, 2025 WL 3041825, at *7 (D. Colo. Oct. 31, 2025) ("AbbVie has not identified

Page 3 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
             IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

a 'uniquely federal interest' here."); *id*. ("*Buckman* [and similar cases] . . . do not support the broad contention that there is necessarily a field preemption issue where 'a state law explicitly depends on a federal statute.'").

Even if PhRMA could somehow establish such an interest here, its argument would still fail because it completely ignores a vital portion of *Forest Park II*'s holding. The *Forest Park II* Court did not stop when it found that the state tort law directly regulated "unique federal laws and programs," as PhRMA would have this Court do here. More is needed to establish preemption. The Court found preemption in that case because

> [t]he effect is that the state law forces the federal government to continue to provide financial assistance to the participant when both the federal government and the participant have chosen to end their relationship. In this way, the state law not only regulates the conduct of the citizen-owner, requiring him to take additional actions in order to withdraw, but also regulates or restricts the actions of the federal government under its own federal program.

*Id*. at 732. Here, the state law does not regulate the federal government at all. H.B. 2385 requires private drug companies to deliver drugs to a 340B hospital's chosen location; the federal government never enters the picture.

Finally, to find conflict preemption, "it is not enough to say that the ultimate goal of both federal and state law is the same." *Id*. (internal quotation marks and citation omitted). Rather, as the *Forest Park II* Court observed, a court must determine that the "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id*. at 733. Critically, here, there are no federal requirements regarding drug delivery to contract pharmacies. *AbbVie Inc. v. Fitch*, 152 F.4th 635, 646 (5th Cir. 2025) (noting that the federal 340B statute "regulates neither the distribution of drugs to patients nor the role of pharmacies in this distribution"); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024) (Section 340B is "silent about delivery conditions"); *Sanofi Aventis U.S. LLC v. HHS*, 58 F.4th 696, 703,

Page 4 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882737.1 0076593-00003

Exhibit 2
Page 9 of 15

707 (3d Cir. 2023) (Section 340B's "text is silent about delivery" and "[l]egal duties do not spring from silence."). Drug companies litigated for years to cement this statutory silence.[1] H.B. 2385 fills that silence by requiring drug companies to treat covered entities like any other purchaser of drugs, with the same freedom to select where their drugs will be shipped. *See PhRMA v. Fitch*, 2024 WL 3277365, at *11 (S.D. Miss. July 1, 2024) ("Congress has not precluded Mississippi from enacting its own policy governing delivery of Section 340B drugs."). Thus, as *Amici* have explained, the Eighth and Fifth Circuits, along with a "very large majority" of other courts to address similar state statutes, *AbbVie v. Weiser*, 2025 WL 3041825 at *4, have already held that a drug manufacturer is unlikely to succeed on a conflict preemption challenge to H.B. 2385. *See* Ex. 1, Amicus Br. of AHA *et al.* § I.B.1, *Novartis Pharms. Corp. v. Joyce*, No. 3:25-cv-1330-IM. Those holdings by courts across the country and the conflict preemption analysis discussed in *Amici*'s brief apply with equal force to defeat PhRMA's argument here: the Oregon statute does not stand as an "obstacle" to the objectives of Congress. To the contrary, H.B. 2385 "assists in fulfilling the purpose of 340B." *PhRMA v. McClain*, 95 F.4th 1136, 1145 (8th Cir. 2025), *cert. denied*, 145 S. Ct. 768 (2024).

Accordingly, this Court should reject PhRMA's lead preemption argument, just as it should reject its more traditional field and obstacle preemption claims, including those discussed below.

---

[1] *E.g.*, AstraZeneca Opening Br. at 4, *AstraZeneca Pharms. L.P. v. HHS*, No. 22-1676 (3d Cir. July 21, 2022) ("Section 340B is 'silent' on the role of contract pharmacies under the program. That silence means the statute does not impose contract pharmacy obligations on manufacturers."); Novartis Opening Brief at 4, *Novartis Pharms. Corp. v. Johnson*, No. 21-5299, 2022 WL 2072941 (D.C. Cir. June 8, 2022) ("Section 340B . . . is *silent* as to whether manufacturers must deliver those drugs to contract pharmacies.") (emphasis added).

Page 5 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

B.      **H.B. 2385 Does Not Conflict with the 340B Statute**

1.      **H.B. 2385 Does Not Conflict with the Federal Audit Process.**

PhRMA's argument that H.B. 2385's prohibition on collecting claims data poses an obstacle to the federal audit process relies on an inaccurate description of that process. The threshold that a drug manufacturer must meet when seeking HRSA's approval to audit a 340B entity does not "present *any barriers* to a manufacturer's ability to perform an audit of a covered entity." ADR Rule, 89 Fed. Reg. 28,643, 28,646 (April 19, 2024) (emphasis added). The standard for audit approval—"reasonable cause"—is satisfied whenever "a reasonable person *could* believe that a covered entity *may have* violated [certain provisions of the 340B statute]." HRSA, *Manufacturer Audit Guidelines and Dispute Resolution Process*, 61 Fed. Reg. 65,406, 65,409 (Dec. 12, 1996). This standard can be met in various ways, including by pointing to "[s]ignificant changes in quantities of specific drugs ordered by a covered entity," or by citing "complaints from patients/other manufacturers about activities of a covered entity[.]" *Id.* at 65,406; *Or. Health & Sci. Univ. v. Engels*, 2025 WL 1707630, at *5 (D.D.C. June 17, 2025); *see, e.g.*, Ex. 2, Decl. of Chantelle V. Britton, HRSA Office of Pharmacy Affairs, ¶ 9 (Dec. 19, 2024).[2] To meet the audit standard, claims data is not, and has never been, required. In fact, drug manufacturers have not identified a single instance where a request for an audit has been denied.

In addition, the 340B statute contemplates that manufacturers will collect specific evidence of covered entities' potential statutory violations *through* an audit—not as a prerequisite to conducting one. The statute provides that a manufacturer can access records related to an entity's

---

[2] As the Director of HRSA's Office of Pharmacy Affairs ("OPA"), Ms. Britton "oversee[s] the OPA staff that reviews requests by drugmakers that participate in the 340B Program to audit covered entities." Ex. 2 ¶ 2. HRSA submitted Ms. Britton's declaration in *University of Washington Med. Ctr. v. Becerra*, No. 1:24-cv-2998-RC (D.D.C.) which is associated with *Oregon Health & Science University v. Engels*, No. 1:24-cv-2184-RC (D.D.C.).

Page 6 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882737.1 0076593-00003

Exhibit 2
Page 11 of 15

compliance *via* an "audit." *Id.* (emphasis added). HRSA guidance similarly explains that, in the ADR process, manufacturers can establish covered entity violations because they "have the ability to gather needed information *through the audits*." ADR Rule, 89 Fed. Reg. at 28,652 (emphasis added). In contrast, HRSA's decision to *approve* a manufacturer audit is "preliminary [in] nature," *Or. Health & Sci. Univ.*, 2025 WL 1707630, at *5, and does not require that the manufacturer be able to prove any suspected violations using data regarding specific claims. PhRMA's concern that manufacturers need claims data *before* any audit misconstrues the statutory scheme.[3]

### 2.     H.B. 2385 Does Not Obstruct Participation in HRSA's Rebate Pilot.

PhRMA's arguments related to the Rebate Model Pilot Program (Rebate Program) fare no better. In July 2025, HRSA announced a one-year "pilot" program that would have permitted certain drug companies to fulfill their obligations under the 340B statute by providing a rebate (instead of a discount) on the ten drugs subject to the Medicare Drug Price Negotiation Program (MDPNP). Under the MDPNP, the manufacturers of those drugs will have to provide the lower of the 340B price or the maximum fair price (MFP) that the manufacturer negotiated with the Centers for Medicare & Medicaid Services. To help manufacturers determine whether they should provide the MFP or the 340B price, HRSA (an agency that is part of the Department of Health and Human Services (HHS)) announced the Rebate Program, which permits manufacturers effectuate the 340B price in the form of a rebate rather than an upfront discount.[4] Under that Rebate Program, covered

---

[3] *See AbbVie v. Skrmetti*, 2025 WL 1805271, at *16 (M.D. Tenn. June 30, 2025) (explaining that drug manufacturers have not "shown that they need claims data . . . they purport to need in order either to request an audit or to attempt to resolve a dispute in good faith before proceeding to ADR").

[4] Medicare Drug Price Negotiation Program: Final Guidance, Implementation of Sections 1191 – 1198 of the Social Security Act for Initial Price Applicability Year 2027 and Manufacturer Effectuation of the Maximum Fair Price in 2026 and 2027 (CMS DPNP Guidance) 1, at

Page 7 –     BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL. IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882737.1 0076593-00003

Exhibit 2
Page 12 of 15

entities would have been required to provide manufacturers data to help them determine which price should be used.

PhRMA's argument is at best premature. The Rebate Program was recently enjoined by the District of Maine, which found that the government acted arbitrarily and capriciously in implementing its Rebate Program, including by failing to consider the cost impact on 340B hospitals. *Am. Hosp. Ass'n v. Kennedy*, No. 25-cv-600, 2025 WL 3754193 (D. Me. Dec. 29, 2025), *appeal dismissed*, No. 25-2236 (1st Cir.). The district court issued a preliminary injunction, and so the Rebate did not go into effect on January 1. The First Circuit denied the government's motion for a stay pending appeal, finding that it was not likely to succeed on the merits of its appeal. *Am. Hosp. Ass'n v. Kennedy*, No. 25-2236, 2026 WL 49499 (1st Cir. Jan. 7, 2026). The government then moved to voluntarily dismiss the appeal, which the First Circuit granted on January 20, 2026, leaving the district court's preliminary injunction in place.[5] *Am. Hosp. Ass'n v. Kennedy*, No. 25-2236, Doc. 118393061 (1st Cir. Jan. 20, 2026). The question of whether HRSA may even permit manufacturers to effectuate the 340B price through a rebate is also being contested in the D.C. Circuit. *Novartis v. Kennedy*, No. 25-5177 (D.C. Cir.). Thus, any preemption claim based on the one-year Rebate Program is premature, given "[t]he existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982). Moreover, a limited conflict as to one specific rebate model related

---

https://www.cms.gov/files/document/medicare-drug-price-negotiation-final-guidance-ipay-2027-and-manufacturer-effectuation-mfp-2026-2027.pdf.

[5] Prior to filing its motion to dismiss the appeal, the government also wrote in a filing before the First Circuit that "[t]he parties are engaged in discussions about returning the approvals challenged in this litigation to the agency for reconsideration." *Am. Hosp. Ass'n v. Kennedy*, No. 25-2236, Doc. 118389298 (1st Cir. Jan. 12, 2026).

Page 8 –    BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
            IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
151882737.1 0076593-00003

Exhibit 2
Page 13 of 15

to a potentially time-limited program would not support striking down H.B. 2385 on its face, in its entirety. *E.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

Regardless, H.B. 2385's claims data provisions do not interfere with a manufacturer's ability to participate in the Rebate Program because H.B. 2385 permits manufacturers to require covered entities to submit claims or utilization data if required by HHS. *See* H.B. 2385 § 1(2)(b); *see also AbbVie v. Weiser*, 2025 WL 3041825, at *12 ("[T]here appears to be no conflict between the [state statute's] plain text and the Pilot Program as far as claims data is concerned."); *AbbVie, Inc. v. Jackley*, 25-cv-3006, 2025 WL 3706066, at *5 (D.S.D. Dec. 22, 2025) (finding that "[t]he plain text of [analogous state statute] does not conflict with the Pilot Program or prevent the limited claims data collection authorized by federal law" for drugs that are "currently enrolled in the Pilot Program"). The Rebate Program is administered by HHS. As such, H.B. 2385 would allow drug manufacturers to collect claims data for the ten drugs subject to the Rebate Program.

## CONCLUSION

PhRMA spends page after page maligning the 340B Program and the covered entities that rely on it. But this is not how the Supreme Court has viewed the program. As Justice Kavanaugh wrote for a unanimous Supreme Court just a few years ago: "340B hospitals perform valuable services for low-income and rural communities but have to rely on limited federal funding for support." *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 738 (2022). Consistent with this view, the Oregon legislature recognized the importance of the 340B Program to hospitals and Oregonians by enacting H.B. 2385. *Cf. Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 74 (2d Cir. 2025).

Page 9 –   BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Court should similarly reject PhRMA's efforts to defeat H.B. 2385. For the foregoing reasons, PhRMA's Motion for Summary Judgment should be denied, and Defendants' Cross-Motion for Summary Judgment should be granted.


DATED:  January 30, 2026                    STOEL RIVES LLP


                                            ___s/ Brad S. Daniels_____
                                            BRAD S. DANIELS, OSB No. 025178
                                            brad.daniels@stoel.com

                                            William B. Schultz*
                                            Aaron Chou*
                                            ZUCKERMAN SPAEDER LLP
                                            wschultz@zuckerman.com
                                            achou@zuckerman.com

                                            Counsel for Amici Curiae
                                            *admitted pro hac vice


Page 10 –  BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
           IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

151882737.1 0076593-00003

Exhibit 2
Page 15 of 15

# Exhibit 3

Brad S. Daniels, OSB No. 025178
brad.daniels@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380

William B. Schultz*
wschultz@zuckerman.com
Courtney Christensen*
cchristensen@zuckerman.com
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

*Attorneys for Amici Curiae The American Hospital
Association, 340B Health, Hospital Association of
Oregon, and American Society of Health-System
Pharmacists*
* pro hac vice application pending

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **AbbVie** *et al.*,<br>        **Plaintiff,**<br><br>   v.<br><br>**Dan RAYFIELD, in his official capacity as Attorney General of the State of Oregon,** *et al.*,<br>        **Defendants.** | Case No.: 6:25-cv-01332-IM<br><br>**BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, 340B HEALTH, HOSPITAL ASSOCIATION OF OREGON, AND AMERICAN SOCIETY OF HEALTH-SYSTEM PHARMACISTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

BRIEF OF AMICI CURIAE THE AMERICAN HOSPITAL ASSOCIATION, ET AL.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

153282257.1 0076593-00003

Exhibit 3
Page 1 of 32

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTEREST OF *AMICI CURIAE* ............................................................................................. 1

INTRODUCTION ..................................................................................................................... 2

I.  H.B. 2385 DOES NOT VIOLATE THE SUPREMACY CLAUSE. ................................... 2

II.  H.B. 2385 DOES NOT CONFLICT WITH THE 340B STATUTE. ................................... 7

    A.  The Presumption Against Preemption Applies. ................................................................ 8

    B.  H.B. 2385 Regulates Delivery, Not Price. ..................................................................... 12

III.  H.B. 2385 DOES NOT VIOLATE THE TAKINGS CLAUSE. ........................................ 14

    A.  H.B. 2385 Will Not Result In a "Taking" of AbbVie's Property. ................................. 14

        1.  H.B. 2385 Will Not Result In a "Physical" Taking. ............................................. 14

        2.  H.B. 2385 Will Not Result in a "Regulatory" Taking. ........................................ 17

    B.  AbbVie's Voluntary Participation in the 340B Program and the Highly-Regulated Pharmaceutical Market Forecloses a Takings Claim. ...................................................... 20

    C.  The Requested Relief Is Not Available Because H.B. 2385 Serves a Valid Public Purpose. ........................................................................................................................... 23

-i-

Exhibit 3
Page 2 of 32

## TABLE OF AUTHORITIES

**CASES**

*AbbVie Inc. v. Fitch,*
152 F.4th 635 (5th Cir. 2025) ............................................................................... *passim*

*AbbVie Inc. v. Neronha*,
No. 25-cv-388 (D.R.I.) ............................................................................................ 7, 21

*AbbVie Inc. v. Skrmetti,*
2025 WL 1805271 (M.D. Tenn. June 30, 2025) ........................................... 15, 16, 21

*AbbVie Inc. v. Skrmetti,*
2026 WL 542712 (M.D. Tenn. Feb. 26, 2026) ................................................... 7, 13

*AbbVie Inc. v. Weiser*,
811 F. Supp. 3d 1264 (D. Colo. 2025) .............................................................. *passim*

*AbbVie v. Fitch*,
2026 WL 1587716 (S.D. Miss. June 3, 2026) ................................................. 5, 7, 11

*AbbVie v. Murrill,*
166 F.4th 528 (5th Cir. 2026) ............................................................................ *passim*

*Andrus v. Allard*,
444 U.S. 51 (1979) ....................................................................................................... 18

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ..................................................................................................... 11

*AstraZeneca Pharms. LP v. Bailey*,
No. 2:24-cv-04143-MDH, 2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ........................ 18, 20

*AstraZeneca Pharms. LP v. Fitch*,
766 F. Supp. 3d 657 (S.D. Miss. 2024) .................................................................... 8

*AstraZeneca Pharms. LP v. Weiser*,
2025 WL 3653161 (D. Colo. Dec. 17, 2025) ............................................................ 12

*AstraZeneca v. Lopez*,
2026 WL 497141 (D. Haw. Feb. 23, 2026) ................................................... 3, 7, 10

*Baker Cnty. Med. Servs., Inc. v. U.S. Atty. Gen.*,
763 F.3d 1274 (11th Cir. 2014) .................................................................................. 21

*Bennett v. Arkansas*,
485 U.S. 395 (1988) ....................................................................................................... 7

*Bond v. United States*,
  572 U.S. 844 (2014)..................................................................................................... 6

*Bowles v. Willingham*,
  321 U.S. 503 (1944)............................................................................................... 21, 23

*Bruns v. Mayhew*,
  750 F.3d 61 (1st Cir. 2014).......................................................................................... 22

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001)............................................................................................... 8, 9, 10

*Burditt v. HHS*,
  934 F.2d 1362 (5th Cir. 1991) ..................................................................................... 21

*Capron v. Off. of Att'y Gen. of Mass.*,
  944 F.3d 9 (1st Cir. 2019)............................................................................................. 6

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021).............................................................................................. 16, 18

*Chamber of Com. v. Whiting*,
  563 U.S. 582 (2011)....................................................................................................... 8

*Chinatown Neighborhood Ass'n v. Harris*,
  33 F. Supp. 3d 1085 (N.D. Cal. 2014) ..................................................................... 6, 14

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992)....................................................................................................... 8

*City of Columbus v. Ours Garage & Wrecker Serv., Inc.*,
  536 U.S. 424 (2002)....................................................................................................... 8

*Colony Cove Props., LLC v. City of Carson*,
  888 F.3d 445 (9th Cir. 2018) ...................................................................................... 19

*Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*,
  508 U.S. 602 (1993).................................................................................................... 19

*Cook v. Rockwell Int'l Corp.*,
  790 F.3d 1088 (10th Cir. 2015) .................................................................................. 10

*CoreCivic, Inc. v. Governor of New Jersey*,
  145 F.4th 315 (3d Cir. 2025) ........................................................................................ 4

*Coventry Health Care of Mo., Inc. v. Nevils*,
  581 U.S. 87 (2017)......................................................................................................... 7

Exhibit 3
Page 4 of 32

*Crosby v. National Foreign Trade Council,*
  530 U.S. 363 (2000)................................................................................................ 13

*Dalton v. Little Rock Family Planning Servs.,*
  516 U.S. 474 (1996) ................................................................................................ 7

*E. Enters. v. Apfel,*
  524 U.S. 498 (1998)................................................................................................ 14

*Eli Lilly & Co. v. HHS,*
  2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) ........................................................ 21

*FCC v. Fla. Power Corp.,*
  480 U.S. 245 (1987)................................................................................................ 15

*Franklin Mem'l Hosp. v. Harvey,*
  575 F.3d 121 (1st Cir. 2009)................................................................................... 16

*Garelick v. Sullivan,*
  987 F.2d 913 (2d Cir. 1993) ................................................................................... 21

*Geo Group, Inc. v. Newsom,*
  50 F.4th 745 (9th Cir. 2022) ................................................................................... 4

*Gonzalez v. Oregon,*
  546 U.S. 243 (2006)................................................................................................ 6

*Hadacheck v. Sebastian,*
  239 U.S. 394 (1915)................................................................................................ 19

*Hines v. Davidowitz,*
  312 U.S. 52 (1941).................................................................................................. 8

*Kelo v. City of New London,*
  545 U.S. 459 (2005)................................................................................................ 23

*Keystone Bituminous Coal Ass'n v. DeBenedictis,*
  480 U.S. 470 (1987)........................................................................................... 18, 23

*Knick v. Township of Scott,*
  588 U.S. 180 (2019)................................................................................................ 23

*Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1,*
  469 U.S. 256 (1985)................................................................................................ 7

*Lingle v. Chevron U.S.A. Inc.,*
  544 U.S. 528 (2005)................................................................................................ 20

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982)................................................................................................................ 15

*Lucas v. S.C. Coastal Council*,
    505 U.S. 1003 (1992)............................................................................................................ 18

*Me. Educ. Ass'n Benefits Tr. v. Cioppa*,
    695 F.3d 145 (1st Cir. 2012)............................................................................................... 19

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)......................................................................................................... 8, 10

*MHC Fin. Ltd. P'ship v. City of San Rafael*,
    714 F.3d 1118 (9th Cir. 2013) ...................................................................................... 18, 19

*Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*,
    742 F.2d 442 (8th Cir. 1984) ............................................................................................... 21

*Nat'l Lifeline Ass'n v. FCC*,
    983 F.3d 498 (D.C. Cir. 2020)............................................................................................. 21

*Novartis Pharms. Corp. v. Bailey*,
    No. 2:24-cv-04131, 2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ........................................ 8

*Novartis Pharms. Corp. v. Fitch*,
    738 F. Supp. 3d 737 (S.D. Miss. 2024) ................................................................................ 7

*Novartis Pharms. Corp. v. Frey*,
    No. 1:25-cv-00407, 2025 WL 2813787 (D. Me. Sept. 23, 2025)................................. 7, 9, 21

*Novartis v. Brown*,
    2026 WL 1660347 (W.D. Wash. June 9, 2026) ............................................................*passim*

*Novartis v. Johnson*,
    102 F.4th 452 (D.C. Cir. 2024)............................................................................................ 10

*Penn Central Transportation Co. v. New York City*,
    438 U.S. 104 (1978)................................................................................................. 18, 19, 20

*Philpott v. Essex Cnty. Welfare Bd.*,
    409 U.S. 413 (1973)............................................................................................................... 7

*PhRMA v. Ellison*,
    No. A25-0805, 2026 WL 445719 (Minn. Ct. App. Feb. 17, 2026) ......................................... 7

*PhRMA v. Fitch*,
    2024 WL 3277365 (S.D. Miss. July 1, 2024) ...................................................................... 12

*PhRMA v. Frey*,
No. 1:25-cv-00469, 2026 WL 184504 (D. Me. Jan. 23, 2026)........................................*passim*

*PhRMA v. McClain*,
95 F.4th 1136 (8th Cir. 2024)........................................................................................*passim*

*PhRMA v. McCuskey*,
171 F.4th 675 (4th Cir. 2026) ...................................................................................... 5, 6, 7

*PhRMA v. Murrill*,
No. 6:23-cv-997, 2024 WL 4361597 (W.D. La. Sept. 30, 2024) ....................................*passim*

*PhRMA v. Skrmetti,*
2026 WL 803261 (M.D. Tenn. March 23, 2026) .................................................................... 7

*PhRMA v. Stolfi*,
153 F.4th 795 (9th Cir. 2025) ................................................................................................ 22

*PhRMA v. Torrez*,
25-cv-1225-MIS-JHR, ECF No. 27 (D.N.M. May 26, 2026)............................................ 3, 7, 9

*PhRMA v. Walsh*,
538 U.S. 644 (2003)..................................................................................................... 11, 22

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1947)............................................................................................................ 10

*Ruckelshaus v. Monsanto*,
467 U.S. 986 (1984)............................................................................................................ 20

*Sanofi Aventis U.S. LLC v. HHS*,
570 F. Supp. 3d 129 (D.N.J. 2021)...................................................................................... 21

*Sanofi Aventis*,
58 F.4th 696 (3d Cir. 2023) ................................................................................................ 10

*Se. Ark. Hospice, Inc. v. Burwell*,
815 F.3d 448 (8th Cir. 2016) .............................................................................................. 21

*St. Francis Hosp. Ctr. v. Heckler*,
714 F.2d 872 (7th Cir. 1983) .............................................................................................. 21

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
535 U.S. 302 (2002)..................................................................................................... 14, 17

*Townsend v. Swank*,
404 U.S. 282 (1971)............................................................................................................. 7

*U.S. Airways v. O'Donnell*,
  627 F.3d 1318 (10th Cir. 2010) .................................................................... 10

*United States v. Washington*,
  596 U.S. 832 (2022) ............................................................................... 3, 4

*Vill. of Euclid v. Ambler Realty Co.*,
  272 U.S. 365 (1926) .................................................................................. 19

*Whitney v. Heckler*,
  780 F.2d 963 (11th Cir. 1986) ................................................................... 21

*Wuebker v. Wilbur-Ellis Co.*,
  418 F.3d 883 (8th Cir. 2005) ...................................................................... 6

*Wyeth v. Levine*,
  555 U.S. 555 (2009) .................................................................................. 10

*Yee v. City of Escondido, Cal.*,
  503 U.S. 519 (1992) ............................................................................. 16, 17

## STATUTES

42 U.S.C. § 1396a ....................................................................................... 22

## OTHER AUTHORITIES

H.B. 2385 ............................................................................................ *passim*

U.S. Const. Amdt. V ................................................................................... 23

## REGULATIONS

Notice Regarding Section 602 of the Veterans Health Care Act of 1992,
  61 Fed. Reg. 43549 (Aug. 23, 1996) ..................................................... 19, 21

## INTEREST OF *AMICI CURIAE*

*Amici* and their members are committed to improving the health of the communities they serve through the delivery of high-quality, efficient, and accessible health care. The discounts provided by the 340B program are essential to achieving this goal. *Amici* therefore have a strong interest in the success of Oregon's legislative efforts to protect the 340B program.

The **American Hospital Association** (AHA) represents nearly 5,000 hospitals, healthcare systems, and other healthcare organizations nationwide. AHA members are committed to helping ensure that healthcare is available to and affordable for all Americans. AHA promotes the interests of its members by participating as *amicus curiae* in cases with important and far-ranging consequences, including cases related to the 340B program.

**340B Health** is a national, not-for-profit organization founded in 1993 to advocate for 340B hospitals—a vital part of the nation's healthcare safety net. 340B Health represents over 1,600 public and private nonprofit hospitals and health systems participating in the 340B program.

The **Hospital Association of Oregon** (HAO) represents 59 community hospitals in Oregon and strives to create a strong and healthy Oregon by working to ensure communities have access to the care they need when they need it. As the collective voice of the state's 59 hospitals, HAO's focus is on advancing policies that address hospitals' current and long-term needs to sustain a health care system that generations of Oregonians can rely on.

The **American Society of Health-System Pharmacists** (ASHP) is the largest association of pharmacy professionals in the United States. ASHP advocates and supports the professional practice of pharmacists in hospitals, health systems, ambulatory care clinics, and other settings spanning the full spectrum of medication use. For over 80 years, ASHP has championed innovation in pharmacy practice, advanced education, and professional development, and has served as a steadfast advocate for members and patients.

153282257.1 0076593-00003

Exhibit 3
Page 9 of 32

**INTRODUCTION**

*Amici* incorporate by reference the amicus curiae briefs that they filed in *Novartis Pharmaceuticals Corp. v. Joyce* (3:25-cv-1330-IM) and *Pharmaceutical Research and Manufacturers of America v. Rayfield* (3:25-cv-01754-IM), both of which are pending before this Court and involve challenges to H.B. 2385, the same law challenged in this case.

The amicus brief in *Novartis,* attached hereto as Exhibit 1, explains: the history of drug companies' policies surrounding contract pharmacies (including the drug companies' change in position); the importance of contract pharmacy arrangements under the 340B program; that Congress did not create or occupy a field when it established the 340B program; and that H.B. 2385 is not conflict-preempted because it regulates only the delivery of 340B drugs (not price) and does not interfere with 340B's federal enforcement regime. It further shows why H.B. 2385 is not an extraterritorial regulation that violates the dormant Commerce Clause.

The amicus brief in *Pharmaceutical Research and Manufacturers of America*, attached hereto as Exhibit 2, explains why H.B. 2385 does not: unlawfully single out a federal program; conflict with the federal audit process; or obstruct participation in HRSA's now-withdrawn rebate pilot program.

*Amici* submit this brief to explain why the Court should reject arguments related to preemption and the Takings Clause that are unique to the Plaintiffs in this case (collectively, "AbbVie") in their challenge to H.B. 2385.

I.    **H.B. 2385 DOES NOT VIOLATE THE SUPREMACY CLAUSE.**

AbbVie argues that H.B. 2385 violates the Supremacy Clause because it "singl[es] out the federal government and its contractors for special regulations or burdens." AbbVie Br. 15.  Though AbbVie avoids labeling it as such, this is, in substance, an argument under the "intergovernmental immunity doctrine," which prohibits state laws that "discriminate[] against the Federal

-2-

Exhibit 3
Page 10 of 32

-3-

Government or its contractors if it singles them out for less favorable treatment, or if it regulates them unfavorably on some basis related to their governmental status." *United States v. Washington*, 596 U.S. 832, 839 (2022) (cleaned up); *see Novartis v. Brown*, 2026 WL 1660347, at *9 (W.D. Wash. June 9, 2026) (recognizing that preemption and intergovernmental immunity are distinct doctrines) (collecting cases). Because H.B. 2385 in no way regulates the federal government or its contractors, it does not implicate the intergovernmental immunity doctrine.

Every court to address intergovernmental immunity in the context of state 340B contract pharmacy statutes has rejected the argument that manufacturers are federal government contractors. As the U.S. District Court for Hawaii found, "[state contract-pharmacy statutes] prohibit[] drug manufacturers from imposing certain delivery conditions on the distribution of Section 340B drugs to covered entities. Those state law requirements do not in any way apply to the United States or any of its agencies or employees." *AstraZeneca v. Lopez*, 2026 WL 497141, at *15; *see PhRMA v. Frey*, No. 1:25-cv-00469, 2026 WL 184504, at *6 (D. Me. Jan. 23, 2026) ("[PhRMA] cites no persuasive authority that would support a finding that the mere participation in a regulatory program or receipt of government incentives confers on the participant a contractor status with the federal government."), *Novartis v. Brown*, 2026 WL 1660347, at *9 (W.D. Wash. June 9, 2026) (similar). As one district court succinctly stated, "[m]anufacturers opting into the 340B program are quite simply not federal contractors." *PhRMA v. Torrez*, 25-cv-1225-MIS-JHR, ECF No. 27 at 19 (D.N.M. May 26, 2026).

H.B. 2385 also does not directly discriminate against the "*operations* of the Federal Government." *Washington*, 596 U.S. at 838 (emphasis added); *Novartis v. Brown*, 2026 WL 1660347, at *10 (W.D. Wash. June 9, 2026). To the contrary, it only affects the conduct of drug companies and 340B covered entities. *AbbVie Inc. v. Weiser*, 811 F. Supp. 3d 1264, 1267 (D. Colo.

-4-

2025) ("Here, it is the non-governmental participants and beneficiaries of the 340B Program—namely, pharmaceutical manufacturers and covered entities—that are the subject of state regulation."). Nor does it regulate any other entities doing work for the federal government or assisting with federal government operations. *See PhRMA v. Frey*, 2026 WL 184504, at *6–7.

For that reason, the cases AbbVie cites are inapposite. *See Novartis v. Brown*, 2026 WL 1660347, at *9-11 (distinguishing the same cases). *Washington* involved private contractors that were hired to do work for the federal government. *See* 596 U.S. at 836 ("Most of the workers involved in the cleanup process are federal contract workers—people employed by private companies under contract with the Federal Government."). The Court held that the state law at issue—which established a compensation scheme that presumed certain diseases and illnesses contracted by federal contractors were caused by radioactive cleanup work—"explicitly treat[ed] federal workers differently than state or private workers." *Id.* at 839.

Like *Washington*, *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022), and *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 320 (3d Cir. 2025), concerned a private contractor doing work for the federal government (operating private detention facilities for U.S. Immigration and Customs Enforcement). There the Ninth and the Third Circuits invalidated state statutes that prevented ICE contractors from continuing to run detention facilities, requiring ICE to entirely transform its approach to detention in the state or else abandon its state facilities. Critically, the "contractors" in *Washington*, *Geo Group*, and *CoreCivic* performed work *for* the federal government. A state law interfering with those private contractors had the same impact as if the federal government itself were doing the work, and so the intergovernmental immunity doctrine straightforwardly applied. This case is fundamentally different from those cases. Here, "[d]rug manufacturers participating in the 340B program . . . do not agree to perform any function

of the federal government or provide any goods or services to the federal government." *PhRMA v. Frey*, 2026 WL 184504, at *6. Instead, they "agree to provide discounts in the marketplace to certain other private entities." *Id*. AbbVie and its sister drug companies therefore "do not fall within any of the recognized categories of entities with whom the government 'deals' for purposes of intergovernmental immunity, such as employees, contract workers, suppliers, or instrumentalities." *Id.*

In any event, state laws such as H.B. 2385 do not discriminate against the federal government or the manufacturers because they "do not alter any bargain or increase any costs." They instead "'simply impose[] on drug manufacturers a negative obligation of non-interference with covered entities' arrangements with contract pharmacies.'" *AbbVie v. Fitch*, 2026 WL 1587716 at *9 (S.D. Miss. June 3, 2026) (citing *AbbVie Inc. v. Fitch,* 152 F.4th 635, 643 (5th Cir. 2025) and *AbbVie v. Murrill,* 166 F.4th 528, 543 (5th Cir. 2026)).

For all these reasons, AbbVie cannot identify a sound doctrinal foothold for its Supremacy Clause argument.  A recent decision by a divided panel of the Fourth Circuit, which broke with the overwhelming weight of authority and issued the first appellate decision striking down a state contract pharmacy statute, suffered from the same problem *See PhRMA v. McCuskey*, 171 F.4th 675 (4th Cir. 2026), *petition for reh'g granted* (Apr. 14, 2026). That opinion—which combined various doctrines into an unprecedented theory of federal supremacy—has since been vacated by the Fourth Circuit and criticized by multiple district courts.

That decision, is wrong in several respects. To take just one example, the Fourth Circuit majority asserted—without any citation or support—that "Section 340B did not merely set a floor to which States may add additional obligations." *Id.* at 692. But this conclusory assertion flips the "background principles of our federal system" on their head. *Gonzalez v. Oregon*, 546 U.S. 243,

Exhibit 3
Page 13 of 32

274 (2006); *Bond v. United States*, 572 U.S. 844, 857–58 (2014). Absent clear indication in the statute's text or history that Congress actually intended to set a ceiling that bars States from exercising their traditional police powers, courts must assume that Congress set a *floor* that permits States to fill any statutory gaps. *E.g.*, *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 888 (8th Cir. 2005); *Capron v. Off. of Att'y Gen. of Mass.*, 944 F.3d 9, 28–29 (1st Cir. 2019); *see also Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1106 (N.D. Cal. 2014), *aff'd*, 794 F.3d 1136 (9th Cir. 2015) (explaining that "matters left unaddressed in such a [federal statutory regulation that is comprehensive and detailed] are presumably left subject to the disposition provided by state law" and finding that plaintiffs had failed to "demonstrate[e] that Congress' decision not to prohibit the possession or trade of shark fin is one that Congress specifically rejected or would not have sanctioned, nor ha[d] they pointed to any support for that notion in the federal shark fin law or its legislative history").

That is just one of the decision's many errors in reasoning. Amici cannot address all of them here. Ultimately, this Court need look no further than the dissenting opinion in that case and a recent decision in the Western District of Washington, both of which persuasively dismantle each step of the *McCuskey* majority's analysis. *See PhRMA v. McCuskey*, 171 F.4th at 697–715 (Benjamin, J., dissenting); *Novartis v. Brown*, 2026 WL 1660347, at *12-14 (W.D. Wash. June 9, 2026). Judge Benjamin's dissent, in particular, demonstrates how radical the majority's newly-invented test for federal supremacy is. *See id.* at 701 (Benjamin, J., dissenting) ("The majority effectively collapses these doctrines into one amorphous framework to get to its conclusion that [analogous law] 'interfere[s] at a high level with Congress's exercise of its spending power.' There

-6-

Exhibit 3
Page 14 of 32

is one fundamental problem: the preemption analysis (amorphous or not) is not more stringent for laws passed under Congress' spending power.").[1]

Put simply, the Fourth Circuit's now-vacated decision in *McCuskey* was wrongly decided. AbbVie has no valid argument under the intergovernmental immunity doctrine, nor, as discussed below, does it have any valid argument under preemption principles or the Spending Clause. Combining each of those flawed arguments into a Franken-theory of federal supremacy cannot salvage them.

## II.    H.B. 2385 DOES NOT CONFLICT WITH THE 340B STATUTE.

The Court should join the growing chorus of district and appellate courts that have rejected AbbVie's conflict preemption theories. *E.g.*, *PhRMA v. McClain*, 95 F.4th at 1144–45; *AbbVie v. Murrill*, 166 F.4th at 540; *AbbVie v. Fitch*, 152 F.4th at 647–48; *PhRMA v. Ellison*, No. A25-0805, 2026 WL 445719, at *11 (Minn. Ct. App. Feb. 17, 2026); *Novartis v. Brown*, 2026 WL 1660347, at *15-21 (W.D. Wash. June 9, 2026); *AbbVie v. Skrmetti*, 2026 WL 542712, at *12 (M.D. Tenn. Feb. 26, 2026).[2] AbbVie's theories fail because it cannot meet the "high threshold," *Chamber of*

---

[1] Like Judge Benjamin, the Supreme Court has consistently applied traditional preemption principles in cases involving Spending Clause legislation. *See, e.g.*, *PhRMA v. Walsh*, 538 U.S. 644, 670 (2003); *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95–99 (2017); *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 478 (1996) (per curiam); *Bennett v. Arkansas*, 485 U.S. 395, 396 (1988) (per curiam); *Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 257–58 (1985); *Philpott v. Essex Cnty. Welfare Bd.*, 409 U.S. 413, 417 (1973); *Townsend v. Swank*, 404 U.S. 282, 285 (1971).

[2] *See also, e.g., AbbVie v. Fitch*, 2026 WL 1587716 at *9 (S.D. Miss. June 3, 2026)*; PhRMA v. Torrez*, 25-cv-1225 (D. New Mexico May 26, 2026); *PhRMA v. Skrmetti,* 2026 WL 803261 (M.D. Tenn. March 23, 2026); *AstraZeneca v. Lopez*, 2026 WL 497141, at *6 (D. Haw. Feb. 23, 2026); *AbbVie v. Weiser*, 811 F. Supp. 3d at 1277–81; *AbbVie Inc. v. Neronha*, No. 25-cv-388 (D.R.I.) (minute order reflecting bench ruling that AbbVie was unlikely to succeed on its preemption claims and takings claims to an analogous state law); *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271, at *13 (M.D. Tenn. June 30, 2025); *Novartis Pharms. Corp. v. Frey*, No. 1:25-cv-00407, 2025 WL 2813787 (D. Me. Sept. 23, 2025), *appeal docketed*, No. 25-1914 (1st Cir. Sept. 26, 2025); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737, 747 (S.D. Miss. 2024); *PhRMA v. Murrill*, No. 6:23-cv-997, 2024 WL 4361597, at *8 (W.D. La. Sept. 30, 2024); *AstraZeneca Pharms. LP v. Fitch*,

-7-

Exhibit 3
Page 15 of 32

-8-

*Com. v. Whiting*, 563 U.S. 582, 607 (2011), that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

### A.     The Presumption Against Preemption Applies.

Congress's purpose is the "ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citation omitted). As the Supreme Court has recognized, in preemption cases, "and particularly in those in which Congress has 'legislated in a field which the States have traditionally occupied,'" *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress," *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 432 (2002); *see also PhRMA v. McClain*, 95 F.4th 1136, 1140 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 768 (2024). That is "particularly" true in "matters of health," given "the historic primacy of state regulation" in that area. *Lohr*, 518 U.S. at 485; *PhRMA v. McClain*, 95 F. 4th at 1140.

Plucking a single phrase out of *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001)—"originates from, is governed by, and terminates according to federal law"—AbbVie insists that the presumption against preemption does not apply here. AbbVie Br. 20. AbbVie claims the presumption does not apply because H.B. 2385 does not operate in a field in which States have traditionally occupied, and instead depends entirely upon federal law. *Id.* But neither the Supreme Court nor any other federal court has endorsed such a far-reaching proposition—in the context of the Spending Clause or otherwise.

---

766 F. Supp. 3d 657, 664–65 (S.D. Miss. 2024); *Novartis Pharms. Corp. v. Bailey*, No. 2:24-cv-04131, 2025 WL 489881, at *2–4 (W.D. Mo. Feb. 13, 2025).

-8-

For starters, H.B. 2385 operates in a field in which states have traditionally regulated: public health, drug distribution, and "the role of pharmacies in this distribution." *AbbVie, Inc. v. Fitch*, 152 F.4th at 646–47. And, as other courts addressing similar state laws have correctly observed, "*Buckman* and *Boyle* . . . do not support the broad contention that there is necessarily a field preemption issue where a state law explicitly depends on a federal statute." *AbbVie, Inc. v. Weiser*, 811 F. Supp. 3d 1264, 1275 (D. Colo. 2025); *see also PhRMA v. Frey*, 2026 WL 184504, at *10 (D. Me. Jan. 23, 2026), *appeal filed*, No. 26-1099 (1st Cir.) ("[T]he Supreme Court has never adopted a categorical rule that requires a finding of preemption whenever a state law is addressed directly to those participating in a federal program."); *id*. at *10 (rejecting PhRMA's argument that "state rules are always preempted if they target a federal program by adding requirements for participants"); *PhRMA v. Torrez*, 25-cv-1225 (D. New Mexico May 26, 2026) ("The Court is simply not persuaded that [analogous state law] intrudes upon Congress's spending power with regard to Medicare and Medicaid; New Mexico's statute simply does not affect that power."); *Novartis Pharms. Corp. v. Frey*, 2025 WL 2813787, at *10 (D. Me. Sept. 23, 2025). The Spending Clause does not change this analysis. As one court recently explained, AbbVie's argument "would collapse the guardrails of federalism in the Spending Clause context by automatically prohibiting states from regulating in areas traditionally left to them." *Novartis v. Brown*, 2026 WL 1660347, at *10 (W.D. Wash. June 9, 2026).

Furthermore, contrary to AbbVie's assertions, *Buckman* did *not* find preemption of the state laws at issue merely because they involved a federal program. Instead, when analyzing those state law fraud-on-the-federal-agency claims, *Buckman* turned on the fact that the laws implicated a unique federal interest. The Court explained: "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied'"; the state law fraud-on-the-agency claim

-9-

would regulate something that is "inherently federal in character." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *see U.S. Airways v. O'Donnell*, 627 F.3d 1318, 1325 (10th Cir. 2010) (citing *Buckman* for the proposition that the presumption against preemption does not apply in a case involving a field "long [] dominated by federal interests"). As the Supreme Court later explained in *Wyeth v. Levine*, "*Buckman* . . . involved state-law fraud-on-the-agency claims, and the Court distinguished state regulation of health and safety as matters to which the presumption [against preemption] *does* apply." 555 U.S. 555, 565 n.3 (2009). Like *Wyeth*, this case involves matters of health and safety—issues that are not uniquely federal and instead fall squarely within a state's historic police powers. *See Lohr*, 518 U.S. at 485; *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1094 (10th Cir. 2015) (recognizing that laws relating to public health and safety are "of traditional state regulation") (citation omitted).

Even more to the point, this case involves a particular aspect of health and safety—drug delivery and contract pharmacies—where courts have held the 340B statute to be silent. *See Novartis v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024); *Sanofi Aventis*, 58 F.4th 696, 703, 707 (3d Cir. 2023). *Buckman* is therefore inapposite. *See AbbVie, Inc. v. Weiser*, 811 F. Supp. 3d at 1275 ("[T]he Supreme Court held in [*Buckman*] that [a] state-law cause[] of action w[as] impliedly preempted by federal common law because there was a 'uniquely federal interest' at stake, like . . . 'the relationship between a federal agency and the entity it regulates.' [] AbbVie has not identified a 'uniquely federal interest here.'"); *AstraZeneca Pharms. LP v. Lopez*, 2026 WL 497141, at *8 (D. Haw. Feb. 23, 2026) ("[Analogous state law] does not, by contrast [to *Buckman*], seek to regulate the relationship between any federal agency and an entity it regulates[.]").

-10-

Exhibit 3
Page 18 of 32

Consider *PhRMA v. Walsh*, 538 U.S. 644, 670 (2003), where the Supreme Court held that a Maine law regarding drug prices was not preempted by the federal Medicaid statute. The Medicaid statute is paradigmatic "Spending Clause legislation." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323 (2015). And *Walsh* involved a state law that directly regulated drug companies that contracted with the federal government when participating in Medicaid. But nothing about the Spending Clause context in *Walsh* factored into the Supreme Court's preemption analysis or prevented the Court from holding that there was no preemption. Therefore, nothing about the Spending Clause context of the 340B program should alter the conclusion that (1) H.B. 2385 is entirely consistent with the Supremacy Clause, and (2) there is no field or conflict preemption in this case, as discussed *infra*. *See also PhRMA v. Frey*, 2026 WL 184504, at \*12 (explaining why *Walsh* defeats PhRMA's obstacle preemption challenge to a similar state statute).

Finally, AbbVie argues that the presumption against preemption does not apply because "discovery confirms that H.B. 2385 does not regulate in classic police-power spheres of 'drug distribution,' 'pharmacy practice,' 'consumer protection,' or 'public health,'" but instead regulates price. AbbVie Br. 21. But *after* extensive discovery, a district court in Mississippi recently rejected AbbVie's exact argument, finding that the "price-versus-delivery contention… is a purely legal question." *AbbVie v. Fitch*, 2026 WL 1587716 at \*4 (S.D. Miss. June 3, 2026). As discussed *infra*, the answer to that legal question is clear: state laws such as H.B. 2385 regulate delivery, not price. *Id*. And, more to the point, the regulation of the delivery of the 340B-eligible drugs has a direct impact on public health.  An Oregon 340B hospital's inability to deliver drugs closer to where patients live will harm those patients, especially those who live in rural communities far from their hospital. More generally, Oregon's 340B hospitals treat the State's most vulnerable patients; if those hospitals suffer because multinational drug companies are unwilling to provide drug

-11-

Exhibit 3
Page 19 of 32

discounts owed by law, so will the patients who rely on those hospitals' services. *See* Ex. 1, *Novartis v. Joyce,* at 5-7; *PhRMA v. McClain*, 95 F.4th at 1139.

### B.    H.B. 2385 Regulates Delivery, Not Price.

At the urging of drug companies, federal courts determined that the 340B statute does not address drug delivery to contract pharmacies. *See AbbVie v. Fitch*, 152 F.4th at 646 (noting the federal 340B statute "regulates neither the distribution of drugs to patients nor the role of pharmacies in this distribution"); *see* Ex. 1 at 1-4 (describing history of drug company efforts to establish 340B statute's silence about drug delivery)

H.B. 2385 fills that silence by requiring drug companies to treat covered entities like any other purchaser of drugs, with the same freedom to select where their drugs will be shipped. *See PhRMA v. Fitch*, 2024 WL 3277365, at *11 (S.D. Miss. July 1, 2024). As courts have consistently found, "Section 340B [] sets the price of the discounted drugs; [statutes like H.B. 2385] merely dictate[] that those drugs must be made available at more locations." *AstraZeneca Pharms. LP v. Weiser*, 2025 WL 3653161, at *8 (D. Colo. Dec. 17, 2025).

 Put another way, H.B. 2385 merely bars drug companies from discriminating against Oregon's 340B hospitals based on their chosen delivery location—taking the federal price as given. Consequently, H.B. 2385, which regulates delivery by prohibiting certain delivery restrictions, does not regulate price and thus does not forbid conduct that Congress intended to allow. *E.g.*, *AbbVie v. Murrill*, 166 F.4th at 542 (explaining that the 340B ceiling price is set by federal, not state, law); *PhRMA v. Fitch*, 2024 WL 3277365, at *11 ("While federal law comprehensively regulates the determination of ceiling prices on Section 340B drugs . . . Congress has not precluded Mississippi from enacting its own policy governing delivery of Section 340B drugs."); *Novartis v. Brown*, 2026 WL 1660347, at *17 (W.D. Wash. June 9, 2026) ("it is difficult to conclude that such silence should be understood as Congress permitting drug

-12-

manufacturers to impose delivery conditions as they please but restricting states' ability to do the same.").

AbbVie argues that "[a]ll H.B. 2385 does is require manufacturers to sell their drugs at a discounted **price**." AbbVie Br. 21 (emphasis in the original). But as courts have consistently found, state statutes like H.B. 2385 "do[] not set or enforce discount pricing." *PhRMA v. McClain*, 95 F.4th at 1145; *see AbbVie v. Fitch*, 152 F.4th at 647 (concluding that an analogous state statute merely "requires drug manufacturers to give custody of discounted drugs to contract pharmacies only insofar as they have partnered with covered entities to distribute the drugs to patients"); *AbbVie v. Murrill*, 166 F.4th at 541 (same); *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271, at *18 (M.D. Tenn. June 30, 2025).

For those reasons, AbbVie's reliance on *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) is unavailing. There, the Supreme Court held that in light of a federal statute which both set economic sanctions against Burma and gave the President "flexible and effective authority over economic sanctions against Burma" preempted a Massachusetts state law which forbid any sales to Burma. *Id.* at 373-74. The Court found that the state law interfered with the President's ability to "make a political statement" and "achieve a political result," and "speak for the Nation with one voice in dealing with other governments." *Id.* at 376, 381. Unlike the Massachusetts statute in *Crosby*, H.B. 2385 does not operate in an area of historic *federal* supremacy like foreign affairs. Nor does it undermine the "congressional calibration of force," as AbbVie claims. AbbVie Br. 20 (citing *Crosby*, 530 U.S. at 380). Congress made no such calibration with respect to drug delivery. Instead, "Congress decided not to undertake regulation of the delivery of 340B drugs or the role of pharmacies in that process—thereby leaving, absent congressional amendment, those matters to state law." *AbbVie, Inc. v. Murrill*, 166 F.4th at 542 (rejecting argument that an

-13-

153282257.1 0076593-00003

Exhibit 3
Page 21 of 32

analogous state statute "skews the [340B] program's delicate balance of statutory objectives" and noting that "part of that balance. . . involved allocating authority between the Federal Government and the States."); *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1106 (N.D. Cal. 2014), *aff'd*, 794 F.3d 1136 (9th Cir. 2015).

## III.    H.B. 2385 DOES NOT VIOLATE THE TAKINGS CLAUSE.

"A party challenging governmental action as an unconstitutional taking bears a substantial burden," *E. Enters. v. Apfel,* 524 U.S. 498, 523 (1998), but AbbVie could not prevail on a Takings Clause claim under even the most lenient of standards. Takings Clause claims fall into two categories: (1) physical takings, which result from permanent physical occupation of private property; and (2) regulatory takings, which stem from government-imposed regulations restricting an owner's ability to use his own property. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). The Fifth Circuit has twice concluded that AbbVie can establish neither type of takings (*AbbVie Inc. v. Murrill*, 166 F.4th 528, 543 (5th Cir. 2026); *AbbVie v. Fitch*, 152 F.4th at 642–44)), and this Court should do the same. For these reasons alone, this Court can deny AbbVie's takings claim without even addressing the question of voluntariness. That said, the Oregon Legislature's amendments to H.B. 2385 confirm that AbbVie's voluntary participation in the 340B Program and Oregon's highly regulated pharmaceutical market separately defeats any takings claim.

### A.    H.B. 2385 Will Not Result In a "Taking" of AbbVie's Property.

#### 1.    H.B. 2385 Will Not Result In a "Physical" Taking.

AbbVie's principal Takings Clause argument is that H.B. 2385 results in a "physical" taking because it compels manufacturers to transfer its property for the benefit of private parties

-14-

Exhibit 3<br>Page 22 of 32

without serving any valid public purpose. AbbVie's takings claims fail because (1) there is no evidence of a *per se* takings claim and (2) H.B. 2385 serves "a valid public purpose."

Court after court has rejected takings claims like those AbbVie presents here. *E.g.*, *AbbVie v. Murrill*, 166 F.4th at 542–44; *Novartis v. Brown*, 2026 WL 1660347, at \*22-23 (W.D. Wash. June 9, 2026); *AbbVie Inc. v. Skrmetti*, 2025 WL 1805271, at \*19 (M.D. Tenn. June 30, 2025). For example, in rejecting a taking challenge to a Mississippi statute similar to H.B. 2385, the Fifth Circuit explained that there was no taking because the Mississippi statute did not force drug manufacturers to transfer their drugs at discounted prices to entities not contemplated by the federal 340B program. *AbbVie v. Fitch*, 152 F.4th at 643. In a second appeal, the Fifth Circuit concluded that Mississippi's statute does "not compel manufacturers to 'complete more sales in the first instance,' as AbbVie asserts; rather, it applies only '*after* [covered entities] have purchased' the discounted drugs and directed their delivery." *AbbVie Murrill*, 166 F.4th at 543 (emphasis and alteration in the original) (quoting *AbbVie v. Fitch*, 152 F.4th at 643).

The Fifth Circuit's decisions align with well-established Supreme Court precedent. The Supreme Court has made clear that the essential "element" of a "physical" takings claim is "required acquiescence." *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987). By that, the Court has drawn a clear dividing line between (1) laws that "*require*" a property owner to "suffer the physical occupation of a portion" of his property, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982), and (2) situations where a property owner voluntarily chooses to engage in a commercial transaction with a third party *and then is subject to government regulation*, *see Fla. Power Corp.*, 480 U.S. at 252–53. As the Court has put it, "it is the invitation . . . that makes the difference." *Id*. at 253. "Limitations on how a business generally open to the public may treat

-15-

Exhibit 3
Page 23 of 32

individuals on the premises are readily distinguishable from regulations granting a right to invade property closed to the public." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 157 (2021).

At bottom, the instant takings claims fail because there is no "required acquiescence" under the new definition of a "340B entity" in H.B. 2385. H.B. 2385 operates *after* AbbVie decides to sell their drugs to 340B hospitals, ensuring only that Oregon's 340B covered entities can choose *where* they want AbbVie to ship the drugs. *See* H.B. 2385 § 1(a)(iii) (restricting manufacturers' ability to interfere with "the acquisition," "dispensation," or "delivery" of a 340B drug). H.B. 2385 simply dictates how a particular aspect of those transactions (delivery) must occur—much like dozens of other state laws regulating the particulars of relationships between buyers and sellers in commercial transactions.

As the Fifth Circuit again correctly recognized, statutes like H.B. 2385 do "not impose on drug manufacturers a positive obligation to directly transfer or sell their drugs to anyone," nor do they "require them to sell larger quantities of their drugs at discounted prices than Section 340B requires and thereby deprive them of sales at full market price." *AbbVie v. Fitch*, 152 F.4th at 643. Instead, H.B. 2385 "simply imposes on drug manufacturers a negative obligation of non-interference with covered entities' arrangements with contract pharmacies." *Id.*; *see PhRMA. v. Murrill*, 2024 WL 4361597, at *14 (W.D. La. Sept. 30, 2024) ("Because [H.B. 2385] does not compel Plaintiffs to directly sell 340B drugs to pharmacies, it is not a taking for purposes of the Takings Clause."). Accordingly, AbbVie's "physical" takings theory fails. *See AbbVie v. Fitch*, 152 F.4th at 643; *AbbVie v. Skrmetti*, 2025 WL 1805271, at *19; *see also Yee v. City of Escondido, Cal.*, 503 U.S. 519 (1992) (government rent control laws or requirements that owner rent to certain tenants is not a taking); *Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121, 126 (1st Cir. 2009)

-16-

Exhibit 3
Page 24 of 32

(rejecting characterization of a state statute requiring hospitals to provide free care to low income patients as a "forced transfer").

The Supreme Court's decision in *Yee v. City of Escondido, Cal.* is instructive. There, the Court explained that when "a landowner decides to rent his land to tenants, the government may place ceilings on the rents the landowner can charge . . . or require the landowner to accept tenants he does not like, without automatically having to pay compensation." 503 U.S. at 529. Here, even accepting AbbVie's arguments, H.B. 2385 is as much a "forced transfer," as it was a forced rental in *Yee*. AbbVie has decided to sell its drugs to Oregon 340B hospitals in exactly the same way the landowner decided to "rent his land to tenants." *Yee*, 503 U.S. at 529. So, just as the government may "require the landlord to accept tenants he does not like," *id.*, Oregon may require AbbVie to accept delivery conditions it does not like. And just as *Yee* held that the law "merely regulate[d] the petitioners' use of their land by regulating the relationship between landlord and tenant," *id.* at 528, the law here merely regulates the *use* of 340B drugs by regulating the relationship between drug company and covered entity.

All in all, H.B. 2385 regulates only the delivery location of drug-shipments *after* AbbVie decided to offer its drugs to Oregon 340B hospitals through the 340B Program. That is not a "physical" taking under the most basic Takings Clause precedent. H.B. 2385 is, at best, a "use" regulation that must be evaluated under the "regulatory" takings framework. As explained below, however, it presents no issue under that framework either.

### 2.     H.B. 2385 Will Not Result in a "Regulatory" Taking.

A "regulatory" taking occurs when a government regulation so severely interferes with an owner's right to use property as to be fairly characterized as having "taken" it. *Tahoe-Sierra*, 535

-17-

U.S. at 322.[3] As the Fifth Circuit found, AbbVie cannot establish a taking under any of the factors outlined in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 123–28 (1978). *AbbVie v. Fitch*, 152 F.4th at 643–44; *see also AstraZeneca Pharms. LP v. Bailey*, No. 2:24-cv-04143-MDH, 2025 WL 644285, at *6 (W.D. Mo. Feb. 27, 2025) (same); *PhRMA v. Murrill*, 2024 WL 4361597, at *15 (same).

The major factors under the *Penn Central* inquiry are "the economic impact of the regulation on the claimant, the extent to which the regulation interferes with distinct investment-backed expectations, and the character of the government action." *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (internal citation omitted). None of these factors supports a valid takings claim here.

*First*, evidence regarding the economic impact of H.B. 2385 falls short. In support of this factor, AbbVie merely states "H.B. 2385 will increase the number of 340B discounts AbbVie provides and thus have an economic impact on AbbVie." AbbVie Br. 34. Generally speaking, laws meant to support the health, safety, morals, and general welfare of the entire community are upheld even if they adversely affect (or even destroy) private property interests. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488 n.18 (1987). Such a reduction in the value of property is insufficient to demonstrate a taking because "Supreme Court precedent has 'long established that mere diminution in the value of property, however serious, is insufficient to

---

[3] At the outset, any "regulatory" takings claim regarding *personal* property—like the drugs at issue here—must overcome the Supreme Court's tradition of skepticism of Takings Clause challenges to restrictions on the use of personal property. *See, e.g.*, *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027–28 (1992); *Andrus v. Allard*, 444 U.S. 51, 66–67 (1979). The Supreme Court has long recognized that states have wide latitude to regulate the use of personal property. *See Andrus*, 444 U.S. at 65–66; *Cedar Point*, 594 U.S. at 147. Even a regulation on the use of personal property that renders it "economically worthless" is generally not viewed as a compensable "taking" under the regulatory takings framework. *Lucas*, 505 U.S. at 1027–28.

-18-

demonstrate a taking.'" *MHC Fin. Ltd. P'ship*, 714 F.3d at 1127 (quoting *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 645 (1993)) (finding 81% diminution in value would not constitute a taking); *see also Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018); *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 384 (1926) (rejecting a takings claim where the claimant's property was deprived of 75% of its value); *Hadacheck v. Sebastian*, 239 U.S. 394, 405 (1915) (rejecting a takings claim where the claimant's property was deprived of 92.5% of its value).

AbbVie fares no better under the second *Penn Central* factor, which focuses on the regulatory environment at the time of the acquisition of the property. Having chosen to do business in the highly-regulated pharmaceutical field, AbbVie cannot now complain that more regulations were unforeseeable, particularly when there was a well-known "gap" in how the 340B Program operated. *AbbVie v. Fitch*, 152 F.4th at 644 (citing Notice Regarding Section 602 of the Veterans Health Care Act of 1992, 61 Fed. Reg. 43549, 43550 (Aug. 23, 1996)); *PhRMA v. Murrill*, 2024 WL 4361597, at *15 (contract pharmacy regulations were foreseeable). Even more significant, pharmaceutical companies had for more than 10 years delivered their drugs to contract pharmacies; they only changed course in 2020. Given that historical record, AbbVie cannot now credibly claim that H.B. 2385 interfered with its investment-backed expectations. *See Me. Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 155 (1st Cir. 2012) (finding the "key aspect of the investment-backed expectations inquiry is the claimant's awareness of the problem that spawned the challenged regulation."); *MHC Fin. Ltd. P'ship*, 714 F.3d at 1128 (9th Cir. 2013) ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.") (internal citations omitted).

-19-

153282257.1 0076593-00003

Exhibit 3
Page 27 of 32

Finally, the third *Penn Central* factor considers the "character of the governmental action—for instance whether it amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005) (internal citations omitted). Here, H.B. 2385 plainly seeks to promote public welfare by adjusting those benefits and burdens. It serves the public good by ensuring that covered entities in Oregon can help their patients to receive drugs "closer to where [they] reside," even if that imposes incidental burdens on drug companies. *See PhRMA v. McClain*, 95 F.4th at 1139. Thus, the character of the government action cuts against AbbVie. *See AbbVie v. Fitch*, 152 F.4th at 644 (holding that "the third *Penn Central* factor . . . weighs in the state's favor"); *AstraZeneca Pharms. LP v. Bailey*, 2025 WL 644285, at *6.

### B. AbbVie's Voluntary Participation in the 340B Program and the Highly-Regulated Pharmaceutical Market Forecloses a Takings Claim.

Even if AbbVie could demonstrate that H.B. 2385 results in a taking, its claims would fail because it participates in both the 340B program *and* Oregon's highly-regulated pharmaceutical market *voluntarily*. Either would be sufficient, but its voluntary participation in both decisively defeats its Takings Clause claim.

Where a property owner voluntarily participates in a government program "in exchange for the economic advantages" of joining that program, there can be no taking. *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1007 (1984). Likewise, regulation affecting a plaintiff's property interests "does not constitute a taking of property where the regulated group is not required to

-20-

participate in the regulated industry." *Whitney v. Heckler*, 780 F.2d 963, 972 (11th Cir. 1986).[4] As other courts have held, these elemental principles defeat a Takings Clause claim.[5] Indeed, numerous courts considering this issue in the federal 340B context have rejected similar Fifth Amendment challenges by pharmaceutical companies.[6] And in the healthcare context more generally, courts routinely reject Takings Clause claims where the plaintiff voluntarily participates in the program or activity that it claims is taking its property.[7]

AbbVie's awareness of the possibility of state regulation of contract pharmacies is especially damning. As several courts have recognized, contract pharmacy regulation "should have been foreseeable to [AbbVie], as Section 340B has had a well-known 'gap' about how delivery must occur," particularly in light of drug companies' argument for that gap, 340B hospitals' longstanding use of contract pharmacies, and prior HRSA guidance relating to contract pharmacies, *AbbVie v. Fitch*, 152 F.4th at 644 (citing Notice Regarding Section 602, 61 Fed. Reg.

---

[4] *See, e.g.*, *Bowles v. Willingham*, 321 U.S. 503, 517 (1944); *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 515 (D.C. Cir. 2020); *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993); *Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984).

[5] *See AbbVie v. Skrmetti*, 2025 WL 1805271, at *19 (an analogous state law "does not require [a drug manufacturer] to sell its drugs in Tennessee at all; [drug manufacturers] voluntarily choose[] to participate in Medicare and Medicaid and to participate in the 340B program as a condition of that choice."); *AbbVie Inc. v. Neronha*, No. 25-cv-388 (D.R.I. Sept. 30, 2025); *see also AbbVie v. Weiser*, 811 F. Supp. 3d at 1282–83 (finding AbbVie was not likely to succeed on its Takings claim on voluntariness grounds); *Novartis v. Frey*, 2025 WL 2813787 at *14 (D. Me. Sept. 23, 2025) ("Because AbbVie can choose not to participate in the 340B program, AbbVie has not demonstrated a likelihood of success on its takings claim.").

[6] *See, e.g.*, *Eli Lilly & Co. v. HHS*, 2021 WL 5039566, at *21 (S.D. Ind. Oct. 29, 2021); *Sanofi Aventis U.S. LLC v. HHS*, 570 F. Supp. 3d 129, 207–10 (D.N.J. 2021), *rev'd on other grounds*, 58 F.4th 696 (3d Cir. 2023).

[7] *See Burditt v. HHS*, 934 F.2d 1362, 1376 (5th Cir. 1991); *Se. Ark. Hospice, Inc. v. Burwell*, 815 F.3d 448, 450 (8th Cir. 2016); *Baker Cnty. Med. Servs., Inc. v. U.S. Atty. Gen.*, 763 F.3d 1274, 1276 (11th Cir. 2014), *cert. denied*, 575 U.S. 1008 (2015); *Minn. Ass'n of Health Care Facilities v. Minn. Dep't of Pub. Welfare*, 742 F.2d 442, 446 (8th Cir. 1984); *Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993); *Whitney v. Heckler*, 780 F.2d 963, 968–73 (11th Cir. 1986); *St. Francis Hosp. Ctr. v. Heckler*, 714 F.2d 872, 875 (7th Cir. 1983).

-21-

Exhibit 3
Page 29 of 32

at 43550); *accord PhRMA v. Murrill*, 2024 WL 4361597, at \*15 (rejecting Takings claim because "regulations requiring delivery and forbidding restrictions against delivery to contract pharmacies were foreseeable"). Tellingly, though aware of similar state laws, AbbVie continues to voluntarily participate in the 340B program. *See AbbVie v. Weiser*, 811 F. Supp. 3d 1264, 1283 (D. Colo. 2025).

AbbVie may respond that it has not voluntarily accepted *state*-imposed obligations. But the requirement of an additional state-law benefit has no basis in precedent. *Id.* at \*13 (AbbVie "cites no case law supporting that each time the government (whether federal or state) imposes a new regulatory requirement upon Medicaid and Medicare participants, it must *also* confer some increased 'benefit' of participation."). And, in any event, manufacturers *do* receive an important benefit from Oregon in exchange for compliance with the Oregon law. Medicaid is a "cooperative federal-state program." *Bruns v. Mayhew*, 750 F.3d 61, 63 (1st Cir. 2014). And state Medicaid coverage of outpatient drugs (only outpatient drugs are subject to the 340B Program) is optional, not mandatory. *See* 42 U.S.C. § 1396a(54); *see also PhRMA v. Walsh*, 538 U.S. 644, 665 (2003). This is more than enough to meet the "additional-State-benefit" standard AbbVie invented.

Healthcare (in general) and pharmaceuticals (in particular) are among the most heavily regulated markets. *PhRMA v. Stolfi*, 153 F.4th 795, 835 (9th Cir. 2025) ("The pharmaceutical industry is unquestionably an industry with a long history of government regulation") (discussing both state and federal regulations). AbbVie's choice to participate in Oregon's pharmaceutical market is fatal to its Takings Clause claim, even if this Court concludes that its voluntary participation in the 340B program is not.

In the end, the drug companies want to have their cake and eat it too. They want to participate in the 340B Program and Oregon's highly-regulated pharmaceutical market without

-22-

accepting the possibility that the economic advantages of doing so may carry the costs of regulation. The law has never supported such a dream. *E.g.*, *Bowles v. Willingham*, 321 U.S. 503, 518 (1944) ("A member of the class which is regulated may suffer economic losses not shared by others. His property may lose utility and depreciate in value as a consequence of regulation.").

## C.     The Requested Relief Is Not Available Because H.B. 2385 Serves a Valid Public Purpose.

Even if AbbVie could somehow establish that H.B. 2385 will result in its property being taken, its takings claim would still fail because the law serves a legitimate public purpose within Oregon's police power. *See PhRMA v. McClain*, 95 F.4th at 1145. AbbVie moves to enjoin H.B. 2385—a form of equitable relief that "is generally unavailable" when the government takes private property for public use because the Constitution specifically provides a monetary remedy for such a taking: "just compensation." U.S. Const. Amdt. V; *Knick v. Township of Scott*, 588 U.S. 180, 201 (2019). For injunctive relief, AbbVie therefore must show not only that H.B. 2385 results in a taking, but also that such a taking falls outside the "broad and inclusive" conception of "public use" that the Supreme Court has repeatedly reaffirmed under the Takings Clause. *Kelo v. City of New London*, 545 U.S. 459, 480–81 (2005). It cannot do so. *Cf. AbbVie v. Fitch*, 152 F.4th at 644 (finding an analogous state statute "was not 'enacted solely for the benefit of private parties,' but rather furthers 'important public interests.'") (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987)). State contract pharmacy statutes like H.B. 2385 "assist[] in fulfilling the purpose of [the 340B program]," which Congress created "to support" covered entities that "perform valuable services for low-income and rural communities but have to rely on limited federal funding for support." *PhRMA v. McClain*, 95 F.4th at 1145. That is plainly a "public purpose."

-23-

Exhibit 3
Page 31 of 32

-24-

DATED: June 22, 2026                 STOEL RIVES LLP


             s/ Brad S. Daniels
             BRAD S. DANIELS, OSB No. 025178
             brad.daniels@stoel.com

             William B. Schultz*
             Courtney Christensen*
             ZUCKERMAN SPAEDER LLP
             2100 L Street NW, Suite 400
             Washington, DC 20037
             Tel: (202) 778-1800
             Fax: (202) 822-8106
             wschultz@zuckerman.com
             cchristensen@zuckerman.com

             Counsel for Amici Curiae
             *pro hac vice application pending